**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 91-8337

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

J0 ANN LACA GIBSON,

Defendant-Appellant.

Appeal from the United States District Court
For the Western District of Texas

( June 5, 1992)

Before POLITZ, Chief Judge, WILLIAMS and DUHE`, Circuit Judges.

POLITZ, Chief Judge:

Convicted of possession with intent to distribute and with importation of marihuana, 21 U.S.C. §§ 841(a)(1), 952(a), Jo Ann Laca Gibson appeals, claiming insufficient evidence of guilt and bad faith destruction of evidence warranting reversal. Finding no error, we affirm.

Background

United States Border Patrol agents at the El Paso, Texas border checkpoint apprehended Gibson as she drove an auto into Texas with 80 pounds of marihuana hidden in a side panel. The vehicle did not belong to Gibson and she denied knowing that it contained drugs. Gibson claims that her sister had earlier driven her and her two young sons to the El Paso side of the Mexico/ United States border and that the three of them walked to Juarez and then taxied to a mechanic's shop where Gibson's car purportedly was being repaired. Because the repairs were not yet complete Gibson said she went to her aunt's house and borrowed the subject vehicle from her aunt's boyfriend so she could drive home to El Paso. She insists that she did not know about the hidden marihuana.

At the border an inspector grew suspicious because Gibson said she was an American citizen but her auto had a Mexican license plate. In addition the auto was spattered with bugs, suggesting a recent drive in the country. The inspector referred Gibson to secondary inspection where the suspicions of that inspector also were aroused by the heavy spattering of bugs on an otherwise clean car. Gibson told the second inspector that the owner was a Juarez resident; the license, however, was from the Mexican interior. Further, the car had no mud on the side, as would be expected of a vehicle driven in Juarez that day. She stated that her own auto was at a mechanic's shop, but blankly stared when asked what repairs were being made. Gibson told the first inspector that the car belonged to her sister's boyfriend; she told the second

2

inspector that it belonged to her aunt's boyfriend.  She told the second inspector that a friend had driven her to the border; she told a customs agent that her sister had done so.  Gibson was unable to answer several routine questions -- the name or address of the mechanic's shop; her aunt's surname or address; the boyfriend's name, first or last; and her plans for return of the borrowed auto to its owner.  In addition Gibson had only ten dollars on her person.

The jury found Gibson guilty of possession with intent to distribute and of importation of marihuana.  She timely appealed.

## Analysis

1.  Sufficiency of the Evidence

Gibson challenges her conviction, claiming that there was insufficient evidence that she knowingly possessed the hidden marihuana.  She moved for acquittal at the close of the government's case and renewed the motion at the close of all the evidence.  In our appellate review we consider the evidence in the light most favorable to the prosecution, asking whether a rational trier-of-fact could have found the essential elements proven beyond a reasonable doubt.[1]

To sustain the charge of importation, the government need only prove that the defendant knowingly played a role in transporting

---

[1]     **Jackson v. Virginia**, 443 U.S. 307, 99 S.Ct. 2781 (1979); **United States v. Gonzalez-Lira**, 936 F.2d 184 (5th Cir. 1991).

contraband from a foreign country into the United States.[2] The elements which the government must prove to convict a defendant of possession of marihuana with intent to distribute are (1) knowing (2) possession of marihuana with (3) intent to distribute.[3] Gibson argues that the government produced insufficient evidence of the knowledge element essential for conviction of either crime.

It is well established in this circuit that in cases involving hidden compartments, reliance may not be placed solely on the defendant's control of the vehicle.[4] In such an instance, possession can be inferred only if knowledge is indicated by additional factors, such as "circumstances evidencing a consciousness of guilt on the part of the defendant."[5] Inconsistent stories may constitute substantive evidence of a defendant's guilty knowledge.[6] Circumstantial factors also include

---

[2] **United States v. Diaz-Carreon**, 915 F.2d 951 (5th Cir. 1990); **United States v. Martinez-Mercado**, 888 F.2d 1484 (5th Cir. 1989).

[3] **United States v. Pierre**, 958 F.2d 1304 (5th Cir. 1992) (*en banc*).

[4] **Gonzalez-Lira; Diaz-Carreon; Martinez-Mercado; United States v. Anchondo-Sandoval**, 910 F.2d 1234 (5th Cir. 1990); **United States v. Richardson**, 848 F.2d 509 (5th Cir. 1988); **United States v. Olivier-Becerril**, 861 F.2d 424 (5th Cir. 1988).

[5] **Richardson**, 848 F.2d at 513.

[6] **Anchondo-Sandoval; Gonzalez-Lira; Diaz-Carreon; Martinez-Mercado; United States v. Farias-Farias**, 925 F.2d 805 (5th Cir. 1991).

lack of knowledge of the name of the true owner and implausible explanations for one's travels.[7]

The evidence before us is not insufficient as a matter of law. The versions of Gibson's border-crossing travels are inconsistent and the several less than credible gaps in her story support incredulity. Not only did she profess a lack of knowledge of her aunt's last name, she did not know the first or last name of the man who ostensibly had just given her his car to cross the border. She did not know the address of either the mechanic's shop where her car was being repaired, or her aunt's house, although only hours or minutes before she had been at both locations. She did not know the name of the shop repairing her car. There is an apparent implausibility in Gibson risking being stranded in Mexico with her small children without a car and with little cash. How would she pay for repairs? What if repairs could not be effected? Such credibility gaps, coupled with the evidence suggesting that the vehicle had been driven outside Juarez, support the rejection of her explanation and her protestations of innocence.

2.   Bad Faith Destruction of Evidence

Before Gibson's defense counsel had the opportunity to examine the marihuana it was destroyed by the United States Customs

_____

[7]   Nervousness, in certain instances, may also be a factor. The second border inspector in the case at bar testified that Gibson was not nervous at first, which he found suspicious, but that she became nervous when the drug dogs arrived, which he also found suspicious. We assess no value to the presence or absence of nervousness in this setting.

5

Service.  Only the lab samples were available.  At trial a customs agent testified about the bulk weight and the authenticity of photographs of the 30 marihuana bricks removed from the car.

Gibson argues that the district court erred in refusing to dismiss the indictment based on the government's destruction of the marihuana.  The destruction of evidence alone does not constitute a due process violation; the defendant must show bad faith on the part of the government officials.[8]  We review the district court's bad faith determination under the clearly erroneous standard.  In the case at bar a customs agent testified that consistent with agency procedure a letter was sent to the United States Attorney requesting notification in writing if the controlled substance should be preserved.  Absent a response, controlled substances routinely are destroyed 60 days after dispatch of such letters.  In this case no response was received and the drugs were destroyed.  We find no error in the trial court's finding that Gibson did not establish bad faith on the part of the government because of the destruction of evidence.

AFFIRMED.

---

[8]    **Arizona v. Youngblood**, 488 U.S. 51 (1988); **United States v. Galvan-Garcia**, 872 F.2d 638 (5th Cir.), cert. denied, 493 U.S. 857 (1989).