### UNITED STATES of America

v.

### Luis Armando SANDOVAL, Silvestre Alvarez.

### Criminal No. L–95–111–S.

United States District Court, S.D. Texas, Laredo Division.

Oct. 17, 1995.

J.C. Trevino, III, Laredo, TX, Luis A. Vallejo, Houston, TX, for Silvestre NMI Alvarez.

Mary Lou Castillo, Asst. U.S. Attorney, Laredo, TX, for U.S.

## MEMORANDUM AND ORDER

KAZEN, District Judge.

Pending before the Court are Defendants' Motions to Dismiss, each styled as a "Motion for Dismissal and Sanctions for the Government's Intentional Destruction of Evidence." (Docket n. 32, 43). Although Defendants Alvarez and Sandoval filed separate motions with the Court, they both urge the same arguments and rely largely upon the same authorities. Therefore the Court will address both motions in this Order. The Defendants allege that the Government in bad faith destroyed evidence, namely 137.25 lbs. of marijuana, thereby denying the Defendants of their constitutional rights to due process. The Defendants move the Court to dismiss the indictments, or in the alternative, to suppress secondary evidence, preclude certain testimony, or give an adverse influence instruction regarding the destruction of evidence in this case.

## FACTUAL BACKGROUND

On April 25, 1995, the Defendants were arrested. Law enforcement officers allegedly seized 137.25 lbs. of marijuana from a confidential informant who told officers that he had obtained the marijuana from the Defendants. The Defendants were then notified in writing (Docket n. 32, exhibit 1) by the U.S. Attorney's Office that the seized marijuana would be destroyed by the Drug Enforcement Agency ("DEA") "on or after 06–24–95." The letter informed the Defendants to notify the United States Attorney's office by June 23, 1995 if they objected to the destruction of the evidence. The letter also stated that if the Defendants moved for a court order to restrain the destruction, the U.S. Attorney's Office would refrain from destroying the contraband.

Adolph R. Guerra, Roerig Oliveria & Fisher, Brownsville, TX, Marissa Perez Garcia Office of the Federal Public Defender, Laredo, TX, for Luis Armando Sandoval.

On May 5, 1995, defense counsel sent to the U.S. Attorney, and filed with the magis-

trate court, a letter requesting that the evidence not be destroyed until the defense could inspect, test and present the evidence to the jury if the Defendants so desired. (Docket n. 32, exhibit 2). The letter also stated defense counsel's intention to file a motion with the court to restrain the Government from destroying the evidence.

Then, on May 9, 1995, defense counsel discussed the evidence with the Government and the two parties agreed to talk with the DEA case agent to arrange for an inspection of the evidence. An arrangement between the defense counsel and the Government was made that the defense would inspect the evidence at the time of the Defendants' arraignment.

The DEA destroyed the evidence on May 17, 1995. On May 19, 1995, the Defendants were indicted. On May 31, 1995, the Defendants were arraigned. At this time, the Government informed the Defendants that attempts were still being made with the DEA case agent to arrange an inspection of the evidence but that scheduling problems had made that difficult. On June 1, 1995, defense counsel for Defendant Alvarez filed a Motion to Compel Government to Preserve Evidence. (Docket n. 7).

On June 23, 1995, the Government informed defense counsel that the evidence had been destroyed. In its response motion, the Government claims it was not aware of the destruction of the evidence "until on or about June 23, 1995."

An evidentiary hearing was held on October 11, 1995. The evidence reflected a classic case of bureaucratic bungling. Drug Enforcement Agent Jackson testified that he thought the notice to the Defendants had a 16–day deadline in keeping with a local custom of trying to hasten the destruction process of the very large quantities of contraband, especially marijuana, seized in this area. He attributed the 60–day period on the notice to a "clerical error." Then, the notice provides for response to the United States Attorney's office, not the DEA. Through lack of diligence on the part of A.U.S.A. Castillo, Agent Jackson was never told of the Defendants' desire to inspect the marijuana. This marijuana was not singled out for destruction but rather was routinely destroyed with thousands of pounds of marijuana on a monthly "burning day."

Assistant United States Attorney Castillo's negligence was apparently fueled by several factors, including: in the unusually high volume of drug cases processed in this division, few defendants actually choose to inspect bundles of contraband; the Defendants' attorneys were from out-of-town and appeared only periodically during the time in question; the DEA case agent was stationed in Zapata, not Laredo; and the apparent preoccupation of the United States Attorney's Office for dealing solely with the DEA case agent to the exclusion of the custodian of evidence. None of this excuses Castillo's dereliction but the Court is convinced that she acted negligently and not in a deliberate, bad faith effort to prejudice the Defendants.

## LEGAL ANALYSIS

The Supreme Court has held that the Government is "constitutionally required to preserve evidence that might be expected to play a significant role in the suspect's defense." *California v. Trombetta*, 467 U.S. 479, 488, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413 (1984). Evidence is material for this purpose if it possesses exculpatory value that was apparent before the evidence was destroyed and if the defendant could not, through other reasonably available means, obtain comparable evidence. *Id.; U.S. v. Binker*, 795 F.2d 1218, 1230 (5th Cir.1986), *cert. denied*, 479 U.S. 1085, 107 S.Ct. 1287, 94 L.Ed.2d 144 (1987) (quoting *Trombetta*, the court stated that "the mere possibility the evidence might aid the defense does not satisfy the constitutional materiality standard"). If there was a low probability that the evidence, if preserved, would have been exculpatory, the defendant's due process rights are not violated by the destruction of the evidence. *United States v. Webster*, 750 F.2d 307, 333 (5th Cir.1984), *cert. denied*, 471 U.S. 1106, 105 S.Ct. 2340, 85 L.Ed.2d 855 (1985).

In a later case, the Supreme Court held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not

constitute a denial of due process of law." *Arizona v. Youngblood,* 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988); *United States v. Gibson,* 963 F.2d 708, 711 (5th Cir.1992) ("the defendant must show bad faith on the part of the government officials"). Explaining the standard for "bad faith," the Supreme Court noted that "[t]he presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood,* 488 U.S. at 56, 109 S.Ct. at 336.

### APPLICATION

■ Defendants allege that because the marijuana was destroyed by the DEA, they were unable to discover potentially exculpatory evidence such as fingerprints and weight and lab analysis of the marijuana. It is undisputed, however, that prior to its destruction, the marijuana was photographed and weighed by the DEA. Also, DEA Agent Jackson personally verified the number of bundles (11), which were delivered to his custody. Representative samples of the marijuana were removed and forwarded to the DEA lab for chemical analysis. These same samples were then sent to the defense-selected forensic chemist for an independent analysis. In addition, the DEA preserved the eleven cellophane and brown tape wrappings, which were used to package the contraband. The Government submitted these wrappings for fingerprint analysis. Finally, defense counsel was given an opportunity to examine the lab reports, samples and findings.

Thus, under the *Trombetta* standard, the DEA agents did preserve that part of the contraband that could possibly be exculpatory; i.e. the wrappings that would display any fingerprints and samples of the marijuana itself. The bulk of the marijuana, which was destroyed, did not possess any exculpatory value that the defendant could not otherwise obtain via the preserved samples sent to the DEA lab and the preserved contraband wrappings. Moreover, in addition to being able to independently test the marijuana samples and the fingerprint analysis, the Defendants will have the opportunity to cross-examine the Government chemist and agent who weighed and tested the evidence. *See Webster,* 750 F.2d at 332–34 (government was not precluded from seeking quantity-based enhancement on basis of destroyed marijuana when the defense had samples available and had the opportunity to cross-examine the government chemist and agent). As in *Webster,* there is no indication in the present case that the agents destroyed the marijuana to circumvent disclosure requirements or for any other improper motive. Under *Youngblood,* the Defendant's due process rights were not violated by the DEA agent's destruction of the marijuana.

Defendants' protests of prejudice ring hollow. Defendants apparently wish to argue that there never was any marijuana delivered by them on the April occasion and that the incident was fabricated by the confidential informant and perhaps Task Force Agent Sammy Torres. Under that scenario, the destruction of evidence of the marijuana hurts the prosecution more than the Defendants. It is the Government's burden to prove that there really was a marijuana transaction. Moreover, even if the marijuana still existed, it is not likely that the Defendants would want to parade all eleven bundles in front of the jury. Routinely, the jury is presented only photographs, sample packages, and testimony of witnesses who claim to have handled the contraband. Further, any suggestion that the destroyed marijuana would have been chemically different from the samples extracted from the bundles is farfetched.

In that connection, it is interesting that the Defendants claim extreme prejudice from destruction of the bulk of the 137 lbs. involved in the April incident while apparently they have never seen, or even asked to see, the 409 lbs. involved in the March incident. As the Court understands the evidence, this much larger load was seized after the load vehicle rolled over on a rural highway, and it is unclear whether this contraband is in federal custody or even still exists.

The Court finds no due process violation. That finding does not condone the sloppy

manner in which the contraband was handled. The Court expects that steps have been or will be taken to better coordinate actions between the DEA and the United States Attorney's Office to prevent any such mistakes in the future.

Accordingly, Defendants' Motions to Dismiss are DENIED.