**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 01-40633

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE LUIS GUTIERREZ-FARIAS,

Defendant-Appellant.

Appeal from the United States District Court
For the Southern District of Texas

June 12, 2002

Before KING, Chief Judge, and HIGGINBOTHAM and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Jose Luis Gutierrez-Farias ("Gutierrez") appeals his conviction and sentence for conspiracy and possession with intent to distribute in excess of 100 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), & 846. We affirm.

Gutierrez arrived at a United States Border Patrol checkpoint driving a white pick-up truck pulling a farm tractor on a flat-bed trailer. In accordance with standard procedure, agents inspected the truck and tractor and asked Gutierrez about his citizenship. Gutierrez stated that he was in the

process of adjusting his status from non-immigrant to lawful permanent resident status. The agent noted that Gutierrez appeared nervous during questioning. After another agent's dog alerted to the tires of the tractor, Gutierrez was referred to a secondary inspection area for a more thorough search. Gutierrez was then asked several questions about his destination and the load he was towing. Gutierrez answered that he was towing the tractor to a ranch "further up the road," but claimed not to know the name of the ranch. When asked where he got the tractor, Gutierrez responded that he got it from another ranch, but did not specify the location of the ranch, from whom he had received the tractor, or to whom he was delivering the tractor.

At the secondary inspection area, agents found the appearance and condition of the tractor to be suspicious. To begin, the tractor was very clean, even though Gutierrez had told agents that it had been outside for three to four months. The agents also observed fresh, clean grease all the way around the rims of the tractor tires, and fresh threads on the lug nuts and bolts, suggesting that the tires had recently been taken off and put back on the tractor. The agents also noticed that the tires were put on backwards with the stems on the inside. The agents each checked the air in the tires and noticed that it smelled sweet, not stale, and that no water came from the valve stem, a significant fact because water is often inserted into tractor tires for balance. During the course of the inspection, Gutierrez looked away from the vehicle and appeared nervous. Agents observed him pacing back and forth, fidgeting, and chain smoking cigarettes. At the secondary inspection area, Gutierrez told one of the agents that he had previously been arrested for marijuana possession.

The tractor was then taken to a tire shop in Hebbronville so that the tires could be removed. The removal process was labor intensive, requiring several tools and the help of four men. Ultimately, the tires were completely cut. In total, twenty-three bundles of marijuana were removed

from the tires, weighing 309 pounds. Thereafter, Gutierrez was arrested and charged with conspiracy and possession with intent to distribute in excess of 100 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), & 846. The government filed a notice of enhancement based on Gutierrez's prior drug conviction. After a trial, during which Border Patrol agents testified to the above facts, a jury convicted Gutierrez on both counts. He was sentenced to two concurrent terms of 120 months' imprisonment to be followed by eight years of supervised release. Gutierrez now appeals his conviction and sentence.

Gutierrez first argues that the evidence presented by the government at trial was insufficient to support his convictions. When reviewing the sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the verdict and determine whether a rational jury could have found the elements of the offense beyond a reasonable doubt. *United States v. Dean*, 59 F.3d 1479, 1484 (5th Cir. 1995). We recognize that the jury was "free to choose among all reasonable constructions of the evidence," *United States v. Chaney*, 964 F.2d 437, 448 (5th Cir. 1992), and we "accept all credibility choices that tend to support the jury's verdict." *United States v. Anderson*, 933 F.2d 1261, 1274 (5th Cir. 1991).

We begin with Gutierrez's assertion that there was insufficient evidence to support his conviction for possession with intent to distribute marijuana. In order to convict Gutierrez of this offense, the government had the burden to prove three elements at trial: (1) knowing (2) possession of marijuana (3) with intent to distribute it. *United States v. Moreno-Hinojosa*, 804 F.2d 845, 847 (5th Cir. 1986). Gutierrez argues that the government failed to satisfy this burden because it failed to present evidence establishing that he knew marijuana was hidden in the tractor tires beyond a reasonable doubt. Specifically, Gutierrez contends that the government's evidence at trial merely

established control of a vehicle containing drugs in a hidden compartment, which this court has previously found insufficient without more to establish knowledge. *United States v. Ortega Reyna*, 148 F.3d 540, 544 (5th Cir. 1998) (stating that mere control of a vehicle containing drugs secreted in a hidden compartment, without more, is normally insufficient to show that the driver of the vehicle knowingly possessed the drugs with intent to distribute them); *United States v. Pennington*, 20 F.3d 593, 598 (5th Cir. 1994) ("The knowledge element in a possession case can be inferred from control of the vehicle in some cases; when the drugs are hidden, however, control alone is insufficient to prove knowledge.").

Contrary to Gutierrez's assertion, we find ample evidence in the record beyond mere control of the tractor from which a rational jury could have inferred guilty knowledge. First, one of the agents at the checkpoint testified that Gutierrez appeared nervous, even before he was directed to the secondary inspection area. *See United States v. Crooks*, 83 F.3d 103, 107 (5th Cir. 1996) (citing nervous behavior as circumstantial evidence supporting jury's finding that defendant knowingly possessed or imported narcotics). The agent also testified to the incompleteness of Gutierrez's answers when asked where he picked up the tractor, and where he was taking it. Based on Gutierrez's demeanor at the checkpoint and the vagueness of his answers, the jury could have inferred that he knew the marijuana was in the tires but was trying to hide that fact. *See United States v. Casilla*, 20 F.3d 600, 603 (5th Cir. 1994) ("Evasive and erratic behavior may be evidence of guilty knowledge."); *United States v. Diaz-Carreon*, 915 F.2d 951, 953 (5th Cir. 1990) (stating that evidence of consciousness of guilt coupled with control over the vehicle in which drugs are found is sufficient to establish knowledge in a hidden compartment case). The jury also could have inferred that Gutierrez was covering up something based on the inconsistency between Gutierrez's story and

the appearance of the tractor.[1]  *United States v. Richardson*, 848 F.2d 509, 513 (5th Cir. 1988) (stating that "'a less-than-credible explanation' is 'part of the overall circumstantial evidence from which possession and knowledge may be inferred'" (quoting *United States v. Phillips*, 496 F.2d 1395, 1398 n.6 (5th Cir. 1974))).  Finally, the jury could have inferred knowledge from the fact that Gutierrez had been convicted of possession of marijuana that was found in a hidden compartment in a vehicle he was driving across the border the previous year.  *See* FED. R. EVID. 404(b) (providing that evidence of past crimes may be admissible as proof of knowledge).  When viewed in the light most favorable to the guilty verdict, this circumstantial evidence combined with his control of the tractor containing marijuana was sufficient to establish knowledge.

Next, we address Gutierrez's assertion that there was insufficient evidence to support his conviction for conspiracy to possess marijuana with intent to distribute it.  In order to convict Gutierrez of the further offense of conspiracy under 21 U.S.C. § 846, the government was required to prove both the existence of an agreement to commit the underlying offense and that each conspirator knew of, intended to join, and participated in the conspiracy.  *United States v. Basey*, 816 F.2d 980, 1002 (5th Cir. 1987).  In addition to arguing that the government failed to prove the underlying offense, Gutierrez contends that the government failed to present any evidence at trial that he entered into an agreement with others to violate the law.

We find the evidence in the record sufficient to support Gutierrez's conspiracy conviction.  As noted above, the evidence in the record was sufficient to support the jury's finding that Gutierrez

---

[1]The jury was also presented evidence that Gutierrez lied to agents about his employment. Gutierrez had told agents that he was employed by Mario Rios Lumberyard in Roma, Texas, but the phone number he gave was incorrect and the only Rios Lumberyard in Roma had no record of his employment there.

was aware of the marijuana in the tractor tires. The record also contains sufficient evidence from which the jury could have inferred that others were involved and that Gutierrez acted pursuant to an agreement to violate the narcotics laws. To begin, the jury could have inferred from the large quantity and value of marijuana, and the difficulty of secreting it in the tires, that others were involved in the scheme.[2] *United States v. Barnard*, 553 F.2d 389, 393 (5th Cir. 1977). The jury also could have inferred that Gutierrez had entered into an agreement with others based on his reluctance to offer any identifying information about those involved in the transport of the tractor, and the fact that he lied about his employment in Roma, Texas. Finally, the jury could have inferred the involvement of others from the fact that Gutierrez did not own the pickup truck he was driving and the apparent concealment of the true owner's identity.[3] When viewed in the light most favorable to the guilty verdict, the evidence presented at trial was sufficient to support Gutierrez's conspiracy conviction.

Gutierrez next argues that the district court committed reversible error when it admitted the testimony of DEA Agent Robert Afanasewicz as an expert on the business of transporting illegal narcotics northwards through South Texas. Specifically, Gutierrez challenges the portion of Agent Afanasewicz's testimony in which he described the manner in which drug trafficking organizations generally select people to transport their drugs and the extent to which those selected are aware of

---

[2]At trial, an expert witness for the government estimated that the marijuana removed from the tractor would be worth $54,000 wholesale in the United States near the border. The value would increase substantially the further the marijuana was transported from the border, and would reach $309,000 wholesale if taken to Chicago.

[3]At trial, the government presented evidence that Ignacio Rodriguez was the last registered owner of the truck, but that title of the truck was held by someone else outside of South Texas.

the drugs they are transporting.[4]  Although the government insists the challenged testimony was admissible evidence of the modus operandi of drug trafficking organizations in the area, Gutierrez contends that Agent Afanasewicz was really giving an opinion as to whether Gutierrez personally had knowledge of the marijuana in the tires.  In addition, Gutierrez argues that the district court failed to make a determination as to whether the agent possessed specialized knowledge that could assist the jury.

We review a district court's decision to admit or exclude evidence for abuse of discretion. *United States v. Jackson*, 50 F.3d 1335, 1340 (5th Cir. 1995).  Review of evidentiary rulings is heightened in a criminal case.  *United States v. Anderson*, 933 F.2d 1261, 1268 (5th Cir. 1991) (explaining that evidence in a criminal trial must be strictly relevant to the particular offense charged). The Federal Rules of Evidence set forth the circumstances in which a district court may permit expert testimony on a matter in dispute at trial.  An expert witness may testify at trial if his "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."  FED. R. EVID. 702.  An expert may testify "in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  *Id.*  An expert in a criminal case may not, however, offer "an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged."  FED. R. EVID. 704(b).  "Such issues are matters for the trier of fact alone."  *Id.*

---

[4]Gutierrez does not challenge all of Agent Afanasewicz's testimony as an expert witness. Gutierrez concedes that the district court properly admitted Agent Afanasewicz's testimony regarding the approximate value of the marijuana removed from the tractor tires.

Agent Afanasewicz's challenged testimony can be summed up as follows: (1) drug owners have managers and other people who work for them; (2) people higher up in the organization hire other people to transport the drugs; and (3) the people doing the hiring "look for people, individuals, approach individuals that have knowledge, that they're involved in this kind of business, and they charge a price." In closing, Agent Afanasewicz described the manner in which people are chosen to transport drug:

> The way it usually works in that respect is that I don't think they would target somebody just off the street that, you know, has no knowledge. Usually, it's somebody that is a friend of a friend. It could start that way.
>
> Usually they want to use people that are—that can be—have a certain amount of trust and responsibility because you have to realize as we showed before here, the amount of money that the narcotics communicates too. It's a lot of money and, you know, this is, like I said, a business. So I mean, just as in any other business, the people need a certain amount of credentials, if you will, to be employed or to be sought out by a narcotics trafficking organization.

On cross-examination the agent confirmed that he had done no work on the present case.

Having carefully reviewed the record, we agree with Gutierrez that the government exceeded its bounds when it solicited the above testimony from Agent Afanasewicz. To begin, we have doubts about whether Agent Afanasewicz's testimony regarding what a person in Gutierrez's position would have known about the drugs he was transporting can fairly be considered "expert." Rather than assisting the jury to understand evidence presented or complicated fact issues in the case, Agent Afanasewicz presented the jury with a simple generalization: In most drug cases, the person hired to transport the drugs knows the drugs are in the vehicle. *See United States v. Washington*, 44 F.3d 1271, 1283 (5th Cir. 1995) (stating that a narcotics agent may testify about the significance of certain conduct or methods of operation unique to the drug business so long as the testimony is helpful and its relevance is not substantially outweighed by the possibility of unfair prejudice or confusion). More

-8-

importantly, we believe Agent Afanasewicz's testimony crosses the borderline long recognized by this court between a "mere explanation of the expert's analysis of the facts" and a "forbidden opinion on the 'ultimate legal issue'" in the case. *United States v. Speer*, 30 F.3d 605, 610 (5th Cir. 1994); *United States v. Dotson*, 817 F.2d 1127, 1132 (5th Cir. 1987). The clear suggestion of Agent Afanasewicz's testimony is that, because most drivers know there are drugs in their vehicles, Gutierrez must have known too. Although admittedly Agent Afanasewicz did not say the magic words—"In my expert opinion, Gutierrez knew the marijuana was in the tires."—we believe his testimony amounted to the functional equivalent of such a statement.[5]

Although we find that the district court abused its discretion by permitting the challenged portion of Agent Afanasewicz's testimony, we nonetheless affirm Gutierrez's conviction because the error was harmless. To begin, the statements made by Agent Afanasewicz constituted only a small portion of an otherwise strong case. *Washington*, 44 F.3d at 1283 (assuming expert testimony admitted in error, error was harmless in light of overwhelming evidence of guilt). Moreover, we note

_____

[5]The government attempts to defend Agent Afanasewicz's testimony on the ground that only a direct statement of the defendant's intent violates Rule 704(b). *Speer*, 30 F.3d at 610 ("Rule 704(b) is not strictly construed and prohibits only a direct statement of the defendant's intent); *United States v. Moore*, 997 F.2d 55, 57-58 (5th Cir. 1993) (upholding, without expressly mentioning Rule 704(b), testimony of expert who "never testified explicitly as to the defendant's intent or state of mind"). Although the government is correct that we have previously endorsed a narrow reading of Rule 704(b), the cases cited by the government are all distinguishable. In each, the expert was called to interpret the behavior of persons and of facts in evidence in light of the expert's experience. *See, e.g., Speer*, 30 F.3d at 609-10 (upholding expert testimony that defendant's purchase of 30 grams of cocaine and use of scales in purchase was more consistent with drug trafficking than with personal use). *Cf. Washington*, 44 F.3d at 1283 n.45 (stating without explanation that the admission of five "expert" opinions relating to certain conduct and methods unique to drug trafficking did not constitute error (citing *United States v. Armendariz-Mata*, 949 F.2d 151, 155 (5th Cir. 1991) (upholding DEA agent's testimony as to the meaning of certain "code words" and significance of some of defendant's actions)). Although these cases describe in broad terms the admissibility generally of expert testimony in drug trafficking cases, none involved the type of generalizations relied upon here.

that the district court attempted to cure any defects in Agent Afanasewicz's testimony by instructing the jury that it could not rely on the agent's testimony alone as proof that Gutierrez knew that marijuana was hidden in the tractor tires.[6] Although the government is warned against relying on such testimony in the future, in light of the strong evidence supporting Gutierrez's conviction in this case, we do not believe reversal is required. *United States v. Williams*, 957 F.2d 1238, 1242 (5th Cir. 1992) ("[U]nless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction, reversal is not required.").

Finally, Gutierrez argues that it was unconstitutional for the district court to impose an enhanced statutory mandatory minimum sentence based on his prior drug conviction when the conviction was not alleged in the indictment or ruled on by the jury. Gutierrez concedes that this claim is foreclosed by precedent. *Almendarez-Torres v. United States*, 523 U.S. 224 (1998); *United States v. Keith*, 230 F.3d 784, 786-87 (5th Cir. 2000). Thus, it fails.

For the foregoing reasons, Gutierrez's convictions and sentence for conspiracy and possession with intent to distribute marijuana are AFFIRMED.

---

[6]Gutierrez renewed his objection after the jury instruction was given.