# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 16, 2010

No. 09-40583

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

MANUEL DE JESUS ESPINOZA,

Defendant–Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:08-cr-02031

Before JONES, Chief Judge, PRADO, Circuit Judge, and OZERDEN,[*] District Judge.

PER CURIAM:[**]

Manuel De Jesus Espinoza appeals his conviction for possessing with the intent to distribute more than 100 kilograms of marijuana, which Border Patrol agents found in his tractor-trailer while at a border checkpoint. On appeal, Espinoza argues that (1) his trial counsel was constitutionally ineffective for

---

[*] District Judge of the Southern District of Mississippi, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

failing to request a *Pennington*[1] jury instruction; (2) the district court erred by failing to provide a *Pennington* jury instruction *sua sponte*; (3) the district court erred by allowing the Government to comment on his post-arrest, pre-*Miranda*[2] silence; (4) the district court abused its discretion by allegedly permitting a Government witness to opine as to whether Espinoza knew he possessed the drugs found in his trailer; and (5) the Government failed to provide sufficient evidence to sustain the jury's verdict.

We decline to reach Espinoza's ineffective assistance of counsel claim, as this allegation is more properly addressed on collateral review. Espinoza failed to object to either the district court's jury instructions or the testimony regarding his post-arrest, pre-*Miranda* silence, and because he has failed to demonstrate a clear or obvious error by the district court on these two grounds, he is not entitled to relief on them. Additionally, no Government witnesses impermissibly commented on Espinoza's knowledge, and therefore the district court did not abuse its discretion by permitting the testimony that Espinoza challenges. Finally, the Government introduced evidence sufficient to support the jury's verdict. For these reasons, we affirm Espinoza's conviction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 11, 2008, Espinoza, while driving a commercial tractor-trailer, arrived at a United States Border Patrol immigration checkpoint near Laredo, Texas. As Border Patrol Agent Jose Martinez questioned Espinoza, the tractor-trailer's sole occupant, about his immigration status, another agent informed Agent Martinez that a narcotics dog had alerted to the trailer. Espinoza complied with a request to move to a secondary inspection area, where the dog alerted to the trailer a second time.

---

[1] *United States v. Pennington*, 20 F.3d 593 (5th Cir. 1994).

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

No. 09-40583

At the secondary inspection area, the agents noticed that the trailer was secured with a seal, which Agent Martinez described as the type that could be purchased at any truck stop, and a padlock. Espinoza provided the agents with the key to the padlock, and upon inspection, the agents discovered, among Espinoza's legitimate cargo, three duffle bags filled with a total of 118 kilograms of marijuana near the middle of the trailer. Agent Ibis Mireles then arrested Espinoza, and testified at trial that Espinoza displayed no emotion while she secured him. Instead, he "just turned around and put his hands in the back." After being advised of his rights, Espinoza agreed to an interview, and denied knowing that his trailer contained the hidden marijuana.

The Border Patrol agents contacted the Drug Enforcement Administration ("DEA"), and DEA Agent Nicholas Rich responded to the scene to take custody of both the contraband and Espinoza. Agent Rich's investigation revealed that Espinoza was contracted to haul automotive parts that he picked up from four separate warehouses in Laredo to a Ryder Plant in Auburn Hills, Michigan, for delivery on November 17, 2008. The tractor-trailer's bill of lading confirmed this route. Agent Rich later inspected each of the four warehouses, noting that every warehouse had security cameras and finding no evidence of marijuana in any of them.

Agent Rich also learned that the padlock securing the trailer belonged to Espinoza personally rather than the trailer company or the owner of the truck, and that the padlock was placed on the trailer after Espinoza's stop at the fourth warehouse. Although the trip from Laredo to Auburn Hills was only scheduled to take three days, Espinoza left Laredo six days before the delivery date. At trial, Agent Rich agreed with Agent Martinez's opinion that the seal on the tractor-trailer could have been purchased at any truck stop.

At trial, Kari McDonald, Ryder's shipping and receiving manager, testified that despite Espinoza's arrest, the truck driven by Espinoza carrying the

3

automotive parts arrived on time on November 17, 2008.  McDonald also testified that forklift operators unloaded the truck, and that between ten and fifteen employees were present when the truck originally driven by Espinoza was unloaded.  At least one of the individuals did not know that he would be assigned to unload Espinoza's truck until the morning that it arrived in Auburn Hills, and McDonald testified that substitute employees are always present to assist with unloading in the event that someone is absent.  McDonald testified that she did not believe it would have been possible for Ryder employees to have unloaded the truck without detecting more than 200 pounds of marijuana.  She also testified that had Ryder employees found the contraband, it would have been considered "a very big deal," and would have resulted in a call to the police. She also confirmed that it should have only taken Espinoza three days to travel from Laredo to Auburn Hills.

At trial, DEA Agent Kurt Jestes testified that the seized marijuana had a gross weight of 118 kilograms, which equated to a value of $33,748 to $46,728 in Laredo and $181,720 to $259,600 in Detroit.  Agent Jestes testified that the price increased so dramatically because transporting marijuana from Texas to Michigan required paying fees to numerous people, such as the owner of any "stash houses," the driver of the truck, and the "broker" who finds the driver. Additionally, Agent Jestes stated that the marijuana would become more expensive the farther north it had to travel because of the increased risk of an encounter with law enforcement.

Espinoza pled not guilty and proceeded to trial on two counts: (1) conspiracy to possess with the intent to distribute over 100 kilograms of marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B); and (2) possession with the intent to distribute over 100 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), and 18 U.S.C. § 2.  At the close of the Government's case, Espinoza moved for a judgment of acquittal,

which the district court granted as to the conspiracy charge.  The district court denied Espinoza's motion as to the possession charge, and submitted his case to the jury.

To find Espinoza guilty of possession with intent to distribute a controlled substance, the jury was required to find, beyond a reasonable doubt, that Espinoza (1) possessed the marijuana, (2) knew he possessed the marijuana, and (3) had the intent to distribute the marijuana.  *See United States v. Solis*, 299 F.3d 420, 446 (5th Cir. 2002).  With regard to the knowledge requirement, the district court provided the jury with the following instructions:

> The word "knowingly" as that term has been used from time to time in these instructions, means that the act was done voluntarily and intentionally and not because of mistake or accident.  Possession, as that term is used in this case, may be of two kinds: actual possession and constructive possession.  A person who knowingly has direct physical control over a thing, at a given time, is then in actual possession of it.
>
> A person who, although not in actual possession, knowingly has both the power and the intention, at a given time, to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it.
>
> Possession may be sole or joint.  If one person alone has actual or constructive possession of a thing, possession is sole.  If two or more persons share actual or constructive possession of a thing, possession is joint.
>
> You may find that the element of possession, as that term is used in these instructions, is present if you find beyond a reasonable doubt that the defendant had actual or constructive possession, either alone or jointly with others.

The jury found Espinoza guilty, and he timely appealed.

## II.  ANALYSIS

On appeal, Espinoza advances five arguments.  First, he contends that his attorney was constitutionally ineffective based on his failure to request a *Pennington* jury instruction. Next, Espinoza alleges that the district court erred

by not including a *Pennington* instruction *sua sponte*. Espinoza also argues that the prosecution impermissibly commented on his post-arrest, pre-*Miranda* silence. Additionally, Espinoza argues that Agent Jestes, the Government's designated expert as to the street value of the marijuana, improperly commented on the ultimate legal issue—whether Espinoza had knowledge of his possession—and thus invaded the province of the jury. Finally, Espinoza contends that the Government did not put forth sufficient evidence to sustain his conviction. We address each argument in turn.

## A.    Ineffective Assistance of Counsel

We have previously held that "'Sixth Amendment claims of ineffective assistance of counsel should not be litigated on direct appeal, unless they were previously presented to the trial court.'" *United States v. Aguilar*, 503 F.3d 431, 436 (5th Cir. 2007) (quoting *United States v. Partida*, 385 F.3d 546, 568 (5th Cir. 2004)). On direct appeal, we will only consider ineffective assistance of counsel claims "in 'rare cases' in which the record allows [us] to 'fairly evaluate the merits of the claim.'" *Id.* (quoting *Partida*, 385 F.3d at 568.) Here, as in *Aguilar*, "the district court did not hold a hearing [on the ineffective assistance of counsel claim] and the record does not provide sufficient detail about trial counsel's conduct and motivations to allow [us] to make a fair evaluation of the merits of" Espinoza's claim. *Id.* We therefore deny, without prejudice to collateral review, Espinoza's appeal on this ground. *See id.*

## B.    *Pennington* Jury Instruction

Espinoza argues that the district court erred by neglecting to provide a *Pennington* jury instruction *sua sponte*. Because Espinoza failed to object to the district court's jury instruction, and we review only for plain error. *See United States v. Betancourt*, 586 F.3d 303, 305–06 (5th Cir. 1998). Plain error review requires an examination of "whether the district court committed an error, whether that error is plain, and whether the error affect[s] substantial rights."

*Id*. at 306 (alteration in original) (citations and internal quotations marks omitted).  To be "plain," an error must be "obvious."  *See United States v. Rice*, 607 F.3d 133, 139 (5th Cir. 2010).

Espinoza relies heavily on *Pennington*, the namesake of his requested jury instruction.  In that case, two defendants were convicted for possession with intent to distribute marijuana after a canine search at a border checkpoint led to the discovery of narcotics.  *Pennington*, 20 F.3d at 596–97.  The defendants both denied knowledge of the presence of the marijuana.  *Id*.  Because the defendants had taken a "circuitous" route, had taken longer than necessary to get to their destination, and had seemed disheveled when stopped, the *Pennington* court held that sufficient evidence existed to support the jury's verdict that the two knowingly possessed the drugs.  *Id*. at 598–99.

The *Pennington* court, however, reversed and remanded the conviction of one of the defendants.  That particular defendant had requested that the district court instruct the jury that "control of a vehicle will suffice to prove knowledge only where the drugs 'are clearly visible or readily accessible.'"  *Id*. at 598 (quoting *United States v. Richardson*, 848 F.2d 509, 513 (5th Cir. 1988)).  Instead, the district court simply instructed the jury that "[a]n act is done knowingly if the defendant is aware of the act and does not act through ignorance, mistake, or accident."  *Id*. at 600.  Because "the instruction did not substantially cover the issue of constructive possession," the *Pennington* court reversed the defendant's conviction and remanded the case for a new trial.  *Id*.  This holding gave rise to what has become known as a *Pennington* jury instruction, which recommends that the district court advise the jury that:

> The government may not rely only upon a defendant's ownership and control of the vehicle to prove the defendant knew that he possessed a controlled substance.  While these are factors you may consider, the government must prove that there is other evidence

7

indicating the defendant's guilty knowledge of a controlled substance hidden in the vehicle.

NOTE, FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (CRIMINAL CASES) § 1.31.

Several distinctions exist between this case and *Pennington*. The *Pennington* court affirmed the conviction of the defendant who did not request the jury instruction, while reversing the conviction of the defendant who did request it. *Pennington*, 20 F.3d at 600. Here, Espinoza did not request the *Pennington* jury instruction, and Espinoza has cited no authority for his argument that the district court was bound to issue it *sua sponte*. Additionally, the *Pennington* court reversed the defendant's conviction after faulting the district court for failing to "substantially cover the issue of constructive possession." *Id*. Here, although the district court failed to give a *Pennington* instruction, it did provide an instruction on constructive possession.

Neither the holding of *Pennington* nor any other case in this Circuit mandates the conclusion that the district court erred. Assuming, without deciding, that the district court erred, it was not plain or obvious. Because plain error review requires a clear, obvious mistake by the district court, we find that Espinoza has not demonstrated that we should disturb his conviction on this ground. *See Rice*, 607 F.3d at 139.

C.    **Comments on Espinoza's Post-ArrestPre-*Miranda* Silence**

Although Espinoza argues that both Agent Mireles and the prosecutor impermissibly commented on Espinoza's post-arrest, pre-*Miranda* silence, Espinoza failed to object to either instance in front of the district court. Consequently, we ask whether the district court plainly erred. *See Betancourt*, 586 F.3d at 305–06. As discussed above, plain error review requires an examination of "whether the district court committed an error, whether that error is plain, and whether the error affect[s] substantial rights." *Id*. at 306

(alteration in original) (citations and internal quotations marks omitted).  To be "plain," an error must be "obvious."  *Rice*, 607 F.3d at 139.

We have not squarely addressed whether the Government violates a defendant's Fifth Amendment right against self-incrimination by commenting on post-arrest, pre-*Miranda* silence.  This question has created a split among our sister circuits, with the Ninth and D.C. Circuits[3] holding that substantive commentary on a defendant's post-arrest, pre-*Miranda* silence violates a defendant's right against self incrimination; the Fourth, Eighth, and Eleventh Circuits[4] holding that it does not; and the First, Sixth, and Seventh Circuits[5] holding that commentary on any *pre*-arrest silence infringes a defendant's right to be free from self-incrimination.  Assuming, without deciding, that the district court erred, any error was certainly not clear or obvious.  *Rice*, 607 F.3d at 139.  We will therefore not disturb the jury's verdict against Espinoza on this ground.  *See also United States v. Salinas*, 480 F.3d 750, 759 (5th Cir. 2007) (addressing post-arrest, pre-*Miranda* silence issue, and stating "[b]ecause this circuit's law remains unsettled and the other federal circuits have reached divergent conclusions on this issue, even assuming that the prosecutor's comments were improper, [the defendant] cannot satisfy the second prong of the plain error test—that the error be clear under existing law").

## D.    Testimony of Agent Jestes

Prior to trial, Espinoza filed a motion *in limine* seeking to exclude all Government testimony regarding the methods used in drug trafficking

---

[3] *See United States v. Velarde-Gomez*, 269 F.3d 1023, 1033 (9th Cir. 2001) (en banc); *United States v. Moore*, 104 F.3d 377, 389 (D.C. Cir. 1997).

[4] *See United States v. Frazier*, 408 F.3d 1102, 1109–11 (8th Cir. 2005); *United States v. Rivera*, 944 F.2d 1563, 1568 (11th Cir. 1991); *United States v. Love*, 767 F.2d 1052, 1063 (4th Cir. 1985).

[5] *See Combs v. Coyle*, 205 F.3d 269, 283 (6th Cir. 2000); *Coppola v. Powell*, 878 F.2d 1562, 1568 (1st Cir. 1989); *Savory v. Lane*, 832 F.2d 1011, 1017 (7th Cir. 1987).

operations, explaining that it would impermissibly influence the jury as to the ultimate legal issue in his case: the knowledge element of the offense. The district court overruled the motion, as well as Espinoza's objections at trial to the testimony of Agent Jestes, in which Agent Jestes explained the reasons for the increase in value of marijuana between Texas and Michigan. On appeal, Espinoza argues that Agent Jestes's testimony included generalizations that drivers are typically hired and provided with drugs, and therefore opined that drivers know when they possess drugs.

We review "evidentiary rulings on a heightened abuse of discretion basis," but "[e]ven an abuse of discretion may not merit reversal if the error . . . was harmless." *United States v. Franklin*, 561 F.3d 398, 404 (5th Cir. 2009). "[T]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact[,]" but an expert witness may not, "with respect to the mental state or condition of a defendant in a criminal case . . . state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto." FED. R. EVID. 704.

"In drug profile cases law enforcement personnel usually testify that because the defendant's conduct matches the profile of a drug courier, he knew about the drugs he was transporting." *United States v. Sanchez-Hernandez*, 507 F.3d 826, 832 (5th Cir. 2007). Because "[a] 'drug courier profile' is 'nothing more than a compilation of characteristics that aid law enforcement officials in identifying persons who might be trafficking in illegal narcotics,'" *id*. at 831 (quoting *United States v. Williams*, 957 F.2d 1238, 1242 (5th Cir. 1992)), we have held that "[d]rug courier profile testimony is 'inadmissible to prove substantive guilt based on similarities between defendants and a profile.'" *Id*. at 832 (quoting *United States v. Brito*, 136 F.3d 397, 412 (5th Cir. 1998)). We have also

10

held, however, that "'narcotics agent[s] may testify about the significance of certain conduct or methods of operation unique to the drug business so long as the testimony is helpful and its relevance is not substantially outweighed by the possibility of unfair prejudice or confusion,'" *United States v. Ramirez-Velasquez*, 322 F.3d 868, 879 (5th Cir. 2003) (quoting *United States v. Garcia*, 86 F.3d 394, 400 (5th Cir. 1996)) (alteration in original), so long as the Government refrains from going "too far in soliciting the functional equivalent of an opinion whether the defendant knew he was carrying drugs." *Id.* (citing *United States v. Gutierrez-Farias*, 294 F.3d 657, 663–64 (5th Cir. 2002)).

Espinoza objected to the following exchange:

THE GOVERNMENT: Okay. And that's a big difference between the low in Laredo and the high in Detroit. Why does the marijuana go up when it goes north?

AGENT JESTES: There's numerous factors that go into the price—why the price increases. Using this example of this amount of marijuana just saying from Laredo to being transported to Detroit, Michigan in a say a tractor-trailer, the amount is going to be starting in Laredo there's numerous people that are going to have to be paid certain fees. It's going have to stay at a house or a stash location here in Laredo which that person is going to have to be paid.

THE DEFENSE: Your Honor, I'm going to object. This goes beyond—he's already testified as to values and not been challenged.

THE COURT: The objection is overruled.

THE GOVERNMENT: Thank you. Please proceed.

AGENT JESTES: Where the marijuana is stored here before it's given to the tractor-trailer driver or the driver that's going to transport it, the person that has it at the house is going to have to be paid a fee. And then you're going to have a person that goes and searches for the driver, which in our terms we call it a broker, essentially. And that person is going to have to go find the driver to transport. Which that person is going to have to be paid a fee. And then once it's ready to be transported.

11

No. 09-40583

THE DEFENSE: Your Honor, we're going to object, [J]udge. It goes to our pretrial motions concerning the extent of this witness's testimony, permissible testimony, Judge.

THE COURT: I don't think it's gotten quite that far, but I would ask you to respond to the question that is being asked. That is basically why does the value increase from Laredo to Detroit without going beyond that question.

AGENT JESTES: Okay.

THE GOVERNMENT: Generally, let me interrupt here. Generally, the further north it goes, there's more risk as you go north, correct?

AGENT JESTES: Yes. Generally once the person is going to transport it from Laredo to Detroit in this matter, the person is going to have custody of the marijuana for a longer period of time, which is going [to] increase the risk. The first risk is going to—from going from Laredo, you're going to have to cross a checkpoint which has a chance of getting caught by law enforcement. And then after that, going to Detroit you have to maintain custody of that marijuana during the entire time which you have—assume the risk of being stopped by law enforcement, having an accident of being broken down on the side of road. All those different factors that could come into play where you could come into contact with law enforcement where the marijuana could be seized. So and all those costs that are associated with it. So the price—.

THE DEFENSE: Your Honor, we're going to object to the narrative nature of the answer, Judge. And we renew our objection from the previous issue.

THE COURT: The objection is overruled.

Espinoza relies heavily on *Gutierrez-Farias*, in which we agreed with a defendant that a government witness crossed "the borderline long recognized by this court between a mere explanation of the expert's analysis of the facts and a forbidden opinion on the ultimate legal issue in the case." 294 F.3d at 663 (citations and internal quotations marks omitted). In *Gutierrez-Farias*, the agent described the manner in which transporters are chosen as such:

The way it usually works in that respect is that I don't think they would target somebody just off the street that, you know, has no

12

knowledge. . . . Usually they want to use people that . . . have a certain amount of trust and responsibility because . . . [of] the amount of money that the narcotics communicates too. . . . [T]he people need a certain amount of credentials.

*Id*. at 662. We concluded that "[t]he clear suggestion of [the agent's] testimony is that, because most drivers know there are drugs in their vehicles, [the defendant] must have known too," and that "[a]lthough admittedly [the agent] did not say the magic words—'In my expert opinion, [the defendant] knew the marijuana was in the tires.'—we believe his testimony amounted to the functional equivalent of such a statement." *Id*. at 663; *but see id*. at 663–64 (affirming the defendant's conviction after finding that the district court's error was harmless).

Similarly, in *United States v. Mendoza-Medina*, we held that the district court abused its discretion when it allowed, over objection, an agent's testimony that "(1) managers in charge of transportation recruit people to transport drugs; (2) the amount of drugs in a load depends on the person's narcotics transporting experience . . . ; (3) trust between the distributor and driver is an essential component; and (4) narcotics traffickers bring their wives and children along." 346 F.3d 121, 127, 129 (5th Cir. 2003). The prosecutor subsequently used this testimony as substantive evidence demonstrating the defendant's guilt. *See id*. at 128 (quoting the prosecution as stating "'[The agent's] experience of five years and hundreds of cases here in Laredo, Texas tells us the defendant knew . . . ,' and 'we also know that it's true, based on DEA intelligence, that narcotics trafficking organizations don't just stick marijuana on tractors of drivers that don't know where it's going.'"). In finding that the district court abused its discretion, we analogized the defendant's case to *Gutierrez-Farias* and *Ramirez-Velasquez*,[6] noting that the agent "made the same generalized statements

---

[6] In *Ramirez-Velasquez*, we found that the district court plainly erred by allowing an agent to testify "that drivers are paid based on past performance, and that organizations tend

13

regarding distributors having to trust their couriers," and that "the prosecutor argued that this testimony proved that [the defendant] knew the drugs were present, using the testimony as substantive evidence." *Mendoza-Medina*, 346 F.3d at 129; *but see id.* (finding the district court's error in admitting the agent's testimony harmless).[7]

We are not persuaded by the cases cited by Espinoza. The reoccurring theme in those cases is the inference that drug dealers need to trust their couriers and that the couriers therefore need to know they are carrying contraband, which leads to the implication that a particular defendant knew he possessed narcotics. Here, however, Agent Jestes did not provide the jury details as to the common characteristics of marijuana transporters themselves, or opine as to whether drug dealers usually know and trust those who transport their contraband. Rather, Agent Jestes explained to the jury the risks involved with transporting marijuana long distances, and why those risks increased the price of marijuana as it travels farther from its source. This testimony is more similar to that in *Sanchez-Hernandez*, 507 F.3d at 832–33, in which we found no abuse of discretion when an officer testified as to how drug smuggling operations are conducted along the Mexican border, and that in *Garcia*, 86 F.3d at 349–400, in which we found no abuse of discretion when an agent testified as to his belief that 166.9 kilograms of cocaine indicated a large narcotics operation involving "car swaps," "stash houses," and "heat runs." We therefore hold that the district court did not abuse its discretion by admitting Agent Jestes's testimony.

---

to seek trustworthy drivers because their cargo is valuable and uninsurable." 322 F.3d at 878–79 (citation omitted); *but see id.* at 879 (holding that despite the district court's error, the defendant was not entitled to relief on his claim because the error did not affect the defendant's substantial rights).

[7] *See also United States v. Ibarra*, 493 F.3d 526, 530, 532 (5th Cir. 2007) (reversing a district court that admitted testimony from an agent who stated that, "in his experience he had never seen a drug trafficking organization entrust a shipment of narcotics of that size to a courier without the courier knowing that he was carrying something illegal").

## E.    Sufficiency of the Evidence

Espinoza argues that the Government did not submit sufficient evidence to sustain the jury's verdict.  Because Espinoza filed a motion for judgment of acquittal, "we review the district court's denial of that motion by examining the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict, and asking whether a rational trier of fact could have found guilt beyond a reasonable doubt." *United States v. Montes*, 602 F.3d 381, 388 (5th Cir. 2010) (citing *United States v. Valdez*, 453 F.3d 252, 256 (5th Cir. 2006)).  "'[I]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt.'" *Id.* (quoting *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc)) (alteration in original). "[C]ircumstances altogether inconclusive, if separately considered, may, by their number and joint operation, especially when corroborated by moral coincidences, be sufficient to constitute conclusive proof." *United States v. Ayala*, 887 F.2d 62, 67 (5th Cir. 1989) (alteration in original) (citation and internal quotation marks omitted).

"To prove possession of marijuana with intent to distribute, the government must demonstrate beyond a reasonable doubt that (1) the defendant knowingly possessed a controlled substance; (2) the substance was in fact marijuana; and (3) the defendant possessed the substance with the intent to distribute it." *United States v. DeLeon*, 247 F.3d 593, 596 (5th Cir. 2001) (citation omitted).  As discussed above, where, as here, drugs are hidden in a vehicle, control of the vehicle alone does not suffice to establish knowledge.  *See Pennington*, 20 F.3d at 598.  We have, however, held that "[o]ne example of circumstantial evidence which may be probative of knowledge is the value of the

15

drug being transported." *United States v. Villarreal*, 324 F.3d 319, 324 (5th Cir. 2003) (citations omitted).

Although the Government did not introduce overwhelming evidence tending to demonstrate Espinoza's knowledge in this case, we cannot say, after drawing all reasonable inferences in favor of the verdict, that no rational trier of fact could have found Espinoza guilty. *See Montes*, 602 F.3d at 388 (citation omitted). Espinoza had his own personal padlock on the trailer. Additionally, although the bill of lading suggested that his trip was only supposed to take three days, Espinoza left three days earlier than necessary. This, coupled with McDonald's testimony that it would have been impossible to unload approximately one hundred kilograms of marijuana without detection at Ryder's Auburn Heights facility, gives rise to an inference that Espinoza left Laredo early to allow himself time to deliver the marijuana before making his legitimate delivery. *See generally United States v. Abreu*, 348 F. App'x 8, 10 (5th Cir. 2001) (per curiam) (unpublished) ("An inference of guilty knowledge . . . arose from the fact that it took [the defendant] over six hours to transport the load to the Sierra Blanca checkpoint, a two-to-three hour trip, and that he provided no full explanation for the length of his trip. This evidence raised an inference that the drugs were placed in the trailer after [the defendant] left the loading area . . . ."). Finally, Espinoza was caught with a significantly valuable amount of marijuana, which can also give rise to an inference of knowledge. *See Villarreal*, 324 F.3d at 324; *see generally United States v. Resio-Trejo*, 45 F.3d 907, 913 (5th Cir. 1995) (describing as "incredulous" the defendant's theory that someone would construct secret compartments in his truck and load it with more than $130,000 worth of marijuana without his knowledge). Because the jury could have reasonably concluded that Espinoza knowingly possessed the marijuana with the intent to distribute it, we affirm the denial of Espinoza's motion for acquittal.

No. 09-40583

## III. CONCLUSION

Because Espinoza has not demonstrated that his is the rare case in which we should consider his ineffective assistance of counsel claim on direct review, we decline to do so. Additionally, we find that the district court did not plainly err by failing to provide the jury with a *Pennington* instruction *sua sponte*, or by allowing Agent Mireles and the prosecutor to comment on Espinoza's post-arrest, pre-*Miranda* silence. We also find that the district court did not abuse its discretion by admitting the testimony of Agent Jestes, who provided the jury with information regarding the increase in value of marijuana between Laredo and Auburn Hills. Finally, the Government introduced sufficient evidence to sustain the jury's guilty verdict. For these reasons, we affirm Espinoza's conviction.

AFFIRMED.