IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 11, 2008

Charles R. Fulbruge III
Clerk

No. 06-40684

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ANDREA GONZALEZ-PERALES,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:05-CR-2628

Before GARWOOD, CLEMENT, and ELROD, Circuit Judges.

PER CURIAM:[*]

After Andrea Gonzalez-Perales was charged with transporting an illegal alien for purposes of commercial advantage or private financial gain, in violation of 8 U.S.C. § 1324, a jury found her guilty of the lesser-included offense of transporting an illegal alien without commercial advantage or private financial gain. She appeals her conviction and sentence, challenging several evidentiary rulings and the jury instruction on the lesser-included offense. For the reasons discussed below, we affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. Facts

A.    Gonzalez-Perales's November 2005 Arrest for Transporting Three Illegal Aliens

Border Patrol Agent Fernando Martinez testified at trial as follows. On November 15, 2005, Andrea Gonzalez-Perales drove three female passengers to the primary inspection lane of a border patrol checkpoint north of Laredo, Texas. Agent Martinez conducted an immigration inspection there, inquiring into the citizenship of the vehicle's occupants. Gonzalez-Perales, a fluent English speaker, stated that she was a resident alien. The three passengers claimed in broken English to be United States citizens. Agent Martinez asked the passengers in Spanish for the names of their birth hospitals, but the passengers were unable to answer. Thereafter, he referred the vehicle to the secondary-inspection area, where he and other agents interviewed the passengers and ultimately determined that they were illegal aliens. Agent Martinez then arrested Gonzalez-Perales and escorted her and the passengers into the checkpoint office.

B.    Gonzalez-Perales's Post-Arrest Statements

Agent Martinez and his colleague, Agent Herman Marin, further testified that upon her arrest, Gonzalez-Perales waived her Miranda rights and agreed to speak with them. When questioned by Agent Martinez, Gonzalez-Perales first stated that her passengers were nieces of her friend, Paolo, and that Paolo had told her that his nieces were in the United States illegally. When questioned by Agent Marin, however, Gonzalez-Perales claimed no knowledge of her passengers' illegal status and denied ever telling Agent Martinez otherwise.

Gonzalez-Perales explained to Agent Marin that she had come to Laredo from Austin, Texas, the day before to pick up her divorce papers and to see her ex-boyfriend. Meanwhile, Paolo had learned that she was in Laredo and had asked her to take his three nieces to a Wal-Mart in San Antonio, Texas, on her way back to Austin. Gonzalez-Perales agreed and told Paolo that she was

staying at the Siesta Motel—a motel that, according to Agent Marin's trial testimony, had a reputation as a place where smugglers stash illegal aliens for subsequent pickup.

The next morning, November 15, the three young women came to Gonzalez-Perales's motel room and knocked on the door. Gonzalez-Perales asked them if they were Paolo's nieces; they said yes; and she told them to stay in the room while she left to get them some food.

C.     Contreras-Puente's Testimony

One of the illegal-alien passengers, Fabiola Beatriz Contreras-Puente, testified at trial that she found a smuggler named Paolo to bring her illegally from Mexico to the United States, and that her brother in Houston agreed to pay him $1,000 upon her arrival in San Antonio. On November 14, Paolo drove her and two other young women to Nuevo Laredo, Tamaulipas, Mexico, from where they left the next morning with a guide who helped them cross the Rio Grande.

The guide then called someone to drive the young women to a motel. Each of the women paid the driver $100. Gonzalez-Perales answered their knock at the motel-room door and asked if they were Paolo's nieces; they said yes, and they all departed the motel together.

Contreras-Puente further testified that, shortly before the checkpoint, Gonzalez-Perales asked the young women if they were Paolo's nieces and they said yes; but Contreras-Puente then stated that she was not Paolo's niece but a friend of the other women. In addition, Gonzalez-Perales twice told the young women to say that they were United States citizens, but Contreras-Puente, who does not speak English, was unable to say the words and could not answer the agent's questions. When the agent asked Contreras-Puente in Spanish about her citizenship, she admitted that she was in the United States illegally from Mexico. She also later testified that all three women were going to a house in San Antonio and did not have plans to go to Wal-Mart.

D. Gonzalez-Perales's Involvement in the October 2005 Alien-Transporting Encounter

Customs Officer Martina Ramos testified at trial that on October 5, 2005, a male driver, with Gonzalez-Perales as the front passenger, drove a minivan to the primary inspection lane of an international bridge that connects Laredo and Nuevo Laredo. Officer Ramos asked Gonzalez-Perales about her citizenship, and she claimed to be a United States citizen. Gonzalez-Perales stated that her two young, female passengers were her daughters, and each passenger gave Officer Ramos a birth certificate. Officer Ramos did not believe that the women were Gonzalez-Perales's daughters because Gonzalez-Perales's clean appearance contrasted with the dirty, muddy appearance of the two young women. Nor did Officer Ramos believe Gonzalez-Perales's story that she was bringing her daughters to the United States for the first time and that the women had been living with their grandmother in Mexico. Consequently, Officer Ramos referred the vehicle to the secondary-inspection area.

Officer Ramos then fingerprinted the two young women and ran their prints in the Customs IDENT/IAFIS computer system, which she testified she and the other agents use frequently. She further testified about the computer system as follows:

> It's a system operated by Customs. It's called IDENT/IAFIS, where all the apprehensions by Border Patrol, Customs, INS. And all the people that we prosecute or send back, they have to be fingerprinted and we have to enroll. So any time the aliens are fingerprinted, all their record is going to come up there.

The computer check revealed that the two women had been stopped the day before by Border Patrol for entry without documents. That encounter had been entered into the computer and the women had been returned to Mexico without prosecution. After the officers entered the new encounter into the computer system, they confiscated the birth certificates, sent the two women back to Mexico, and released Gonzalez-Perales and the driver into the United States.

The defense did not present any evidence after the government rested its case.

## II. Discussion

Gonzalez-Perales argues that the district court erred by: (1) admitting testimony regarding her involvement in the October 2005 alien-transporting encounter because it was hearsay, a violation of the Confrontation Clause, and a violation of Federal Rule of Evidence 404(b); (2) admitting "guilt by association" testimony regarding the Siesta Motel's reputation as a place where smugglers stash illegal aliens for subsequent pickup; and (3) submitting a pattern jury instruction on the lesser-included offense.

### A. The October 2005 Alien-Transporting Encounter Testimony

#### 1. The Public Records Hearsay Exception

For the first time on appeal, Gonzalez-Perales argues that Officer Ramos's testimony regarding the October encounter was inadmissible hearsay under Federal Rule of Evidence 803(8) because the results of the Customs computer system check involved matters observed by law enforcement in a criminal case. At trial, Gonzalez-Perales objected to the admission of this testimony solely upon the grounds of the Confrontation Clause and Federal Rule of Evidence 404(b). Accordingly, because she now raises an argument that is different from the one raised in the district court, this Court reviews her hearsay argument for plain error. See United States v. Jimenez, 256 F.3d 330, 340 (5th Cir. 2001) ("When a defendant . . . urges a different ground for the objection on appeal than before the district court, we review for plain error." (citing United States v. Heath, 970 F.2d 1397, 1407 (5th Cir. 1992))).

The public records hearsay exception provides that the following is admissible despite the general prohibition against hearsay:

> (8) Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there

was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate a lack of trustworthiness.

FED. R. EVID. 803(8).

It is well settled that "[c]ustoms . . . officials are 'law enforcement personnel' within the meaning of [this rule]." United States v. Puente, 826 F.2d 1415, 1417 (5th Cir. 1987) (citation omitted). This Circuit makes a distinction, however, between "law enforcement reports prepared in a routine, non-adversarial setting, and those resulting from the arguably more subjective endeavor of investigating a crime and evaluating the results of that investigation." United States v. Quezada, 754 F.2d 1190, 1194 (5th Cir. 1985). In other words, "documents recording routine, objective observations, made as part of the everyday function of the preparing official or agency" are admissible under Rule 803(8)(B), even if the documents are prepared by a police officer or other law enforcement official. Id.

Here, the Customs computer information that the passengers had been returned to Mexico was recorded by Officer Ramos as part of a routine, administrative procedure in a non-adversarial setting. Officer Ramos testified that she and the other officers use the Customs computer system frequently to record encounters with aliens, including the aliens' fingerprints, whether those aliens are prosecuted or returned to Mexico. In addition, she testified that the particular computer check at issue revealed that the two passengers had been apprehended in the same clothing by Border Patrol for "[e]ntry without documents" on October 4, 2005, that the encounter was recorded into the computer system, and that the women were returned to Mexico without prosecution.

Gonzalez-Perales baldly asserts that while our precedent allows for the admission of public records that "reflect objective facts," the instant IDENT/IAFIS records reflect "criminal interrogations and law enforcement investigative measures." To the contrary, the repetitive, everyday IDENT/IAFIS notations are exactly the kind of "mechanically register[ed,] . . . unambiguous factual matter[s]" that this Circuit has found to be inherently reliable.[1] See id. And "[t]here is no reason to believe that because this information was later retrieved in connection with litigation, it is less reliable than when first recorded." Puente, 826 F.2d at 1418.

Accordingly, Officer Ramos's testimony regarding the October alien-transporting encounter was admissible under the public records hearsay exception. Gonzalez-Perales has not shown any error, let alone plain error.

### 2. The Confrontation Clause

Gonzalez-Perales also asserts that the testimony regarding the October alien-transporting encounter violated the Confrontation Clause. As discussed above, however, because this evidence meets the public records hearsay exception, it is not "testimonial" and, therefore, does not implicate the Confrontation Clause. See United States v. Lopez-Moreno, 420 F.3d 420, 437 (5th Cir. 2005) (noting that computer records that satisfy the public records hearsay exception are non-testimonial such that the requirements of the Confrontation Clause do not apply).

### 3. Federal Rule of Evidence 404(b)

Gonzalez-Perales further contends that the prosecutor's closing argument was improper because it exceeded the limited purposes for which the testimony regarding the October encounter was admitted under Federal Rule of Evidence

---

[1] What is more, no computer records or printouts were even admitted in the instant case; rather, Officer Ramos simply testified about the information retrieved from the IDENT/IAFIS. In addition, because Officer Ramos never testified about any statements made by the passengers, there is no hearsay-within-hearsay problem either.

404(b).[2]  Because Gonzalez-Perales did not timely object, this Court reviews her claim of improper closing argument for plain error.  United States v. Thompson, 482 F.3d 781, 785 (5th Cir. 2007) ("As [the defendant] failed to object timely to the prosecutor's comments, we review them for plain error." (footnote omitted)).

We hold that the prosecutor's closing argument did not violate Rule 404(b).

---

[2] Gonzalez-Perales challenges the following three portions of the prosecutor's closing argument:

(1)        . . . What's important is she was caught a month before trying to smuggle aliens in. That's what you can infer that she was doing.  Now, if someone has tried to smuggle aliens across the Rio Grande before and you have three people showing up at your hotel who wanted a ride and they all had wet pants, what do you think?  Do you think they just came across the river?  It's probably a pretty good chance.  And you can look at that piece of evidence and the circumstance in connection with all the other pieces of evidence.

(2)        The way to [ensure that the alien smuggling goes smoothly] is to hire someone who knows what they're doing and to make sure they get there.  And here's the defendant. Does she know what she's doing?  Well, she's experienced.  She did it just one month before.  So, she'd probably be a good person to hire . . . .

The way [alien smugglers] do it is not to trick someone into taking your load north and it's not to ask for favors.  It's to pay someone who knows what they're doing, who knows they're aliens and who's experienced and is going to do it right.  That's how you know that she knows what she's doing.

(3)        . . . She's a pro.  That's why she's hired to do this.  She did it once before, a month before.  That's . . . exactly why she was hired.

. . . You only get your money if the aliens make it to San Antonio.  And so if that's your goal, who are you going to hire?  You're going to hire someone who knows what they're doing and you're going to hire someone who knows they're aliens and you're going to hire someone who's experienced.  You know she's experienced.  You heard evidence of that.

The third portion was the prosecutor's response to defense counsel's closing argument that the driver had not given any instructions about what to do or say upon dropping the aliens off at the motel room.  It was at that point—after the prosecutor had already argued the October encounter evidence without objection in his initial closing and earlier in the rebuttal closing—that defense counsel belatedly objected:

Your Honor, I'd object to this line of argument.  It's inappropriate.  That it's argument to the jury.  It's not part of the law.  That they be given an instruction that it's supposed to be considered for a limited purpose only.

As requested, the court instructed the jury as follows:

Ladies and gentleman—your objection is overruled—but let me emphasize that the evidence submitted to you as to the prior offense was submitted to you for a limited purpose that is defined for you in the instructions and the law, which you are bound to follow the Court's instructions for purpose that the evidence should be considered for.

First, the prosecutor argued that based on the October encounter testimony admitted at trial, the jury could "infer" that Gonzalez-Perales "was caught a month before trying to smuggle aliens in." The prosecutor argued that the prior incident established her intent to transport the three alien passengers illegally in November 2005, her knowledge of how to do so, and her absence of mistake in doing so—all of which fall within the bounds of Rule 404(b). See United States v. Washington, 44 F.3d 1271, 1278 (5th Cir. 1995) ("[A] prosecutor is not prohibited from recit[ing] to the jury those inferences and conclusions he wishes [the jury] to draw from the evidence so long as those inferences are grounded upon the evidence." (internal quotation marks and footnote omitted)).

Second, the prosecutor's statement regarding Gonzalez-Perales's knowledge of alien smuggling constituted a fair response to and explanation of defense counsel's closing argument that the driver had not given any instructions about what to do or say upon dropping the aliens off at the motel. See United States v. Vaccaro, 115 F.3d 1211, 1217 (5th Cir. 1997) ("'The prosecution [is] entitled to make a fair response in rebuttal' to the arguments of defense counsel." (quoting United States v. Williams, 822 F.2d 512, 518 (5th Cir. 1987))). And this Court assumes that the jury was sufficiently competent to discount the prosecutor's hyperbolic characterization of Gonzalez-Perales as a "pro." See id. at 1216 ("[W]e assume that the jury has the common sense to discount the hyperbole of an advocate, discounting the force of the argument.").

Third, as Gonzalez-Perales requested in her belated objection, the district court instructed the jury to consider the testimony regarding the October encounter for the limited purposes specified in the jury instructions. The jury instructions showed that this testimony was admitted for the limited purposes of showing state of mind, intent, knowledge, plan, preparation for the commission of a crime, or absence of mistake. As a result, even assuming a risk of prejudice, the district court's cautionary instruction effectively mitigated any potential harm. See Zafiro v. United States, 506 U.S. 534, 540 (1993) (noting

9

that a potential risk of prejudice can be cured with proper instructions, and that "juries are presumed to follow their instructions" (internal quotation marks and citation omitted)); see also United States v. Levine, 80 F.3d 129, 136 (5th Cir. 1996) (holding that the district court's curative instructions minimized any prejudice arising from the prosecutor's closing argument).

Accordingly, the prosecutor's closing argument regarding the October encounter did not violate Rule 404(b). Gonzalez-Perales has failed to show any error, much less plain error.[3]

B.     Testimony Regarding the Siesta Motel's Reputation

At trial, Gonzalez-Perales objected to testimony regarding the Siesta Motel's reputation as a place where smugglers stash illegal aliens for subsequent pickup on the grounds of relevancy and undue prejudice. She argues that this evidence allowed the jury to find her "guilty by association" with the motel.[4] We review the district court's evidentiary ruling for abuse of discretion. United States v. Gutierrez-Farias, 294 F.3d 657, 662 (5th Cir. 2002) (citation omitted).

Our precedent is well settled that the Government may "not attempt to prove a defendant's guilt by showing that she associates with 'unsavory characters.'" United States v. Polasek, 162 F.3d 878, 884 (5th Cir. 1998) (citation

---

[3] Given that the evidence was uncontradicted and unchallenged that Gonzalez-Perales transported illegal alien Contreras-Puente, the only issue as to the offense of conviction was Gonzalez-Perales's knowledge or state of mind at the time.

[4] On direct examination, Officer Marin testified about the Siesta Motel's reputation as follows:

Q.     . . . And based on your experience in that four years and seven months as a Border Patrol officer, have you come to learn if there's any particular reputation of the Siesta Motel?

A.     Yes, sir.

Q.     What is that reputation?

A.     It's a place where they stash a lot of illegal aliens.

Q.     Who is "they"?

A.     The smugglers. Usually the smugglers put illegal aliens in that motel to then go later on and pick them up.

omitted). The Government correctly argues that this precedent involves guilt by association with particular people rather than with a particular place. Even assuming arguendo, however, that this precedent should be applied in the context of a place rather than a person, and that therefore it was error to admit the testimony regarding the Siesta Motel's reputation for alien smuggling, any such error was harmless. See Gutierrez-Farias, 294 F.3d at 663 ("Although we find that the district court abused its discretion by permitting the challenged portion of [the agent's] testimony, we nonetheless affirm [the defendant's] conviction because the error was harmless."). The testimony comprised a small part of an otherwise strong case given Gonzalez-Perales's inconsistent responses to the agents regarding her knowledge of the passengers' illegal-alien status, the Rule 404(b) evidence of her involvement in the October encounter, and, most of all, Contreras-Puente's testimony regarding Gonzalez-Perales's role in the smuggling scheme. See id. (holding that the district court's erroneous admission of challenged testimony was harmless in part because "the statements made by [the agent] constituted only a small portion of an otherwise strong case" (citation omitted)).

Accordingly, the district court's admission of the testimony regarding the Siesta Motel's reputation was, at most, harmless error.

C.     The Pattern Jury Instruction On the Lesser-Included Offense

In the district court, Gonzalez-Perales objected to submission of instructions for both alien transporting for financial gain and simple alien transporting and argued for submission of only the lesser offense. She did not object, however, that this Circuit's pattern jury instruction on lesser-included offenses was erroneous. Accordingly, we review her argument for plain error. See United States v. Daniels, 281 F.3d 168, 183 (5th Cir. 2002) ("When a defendant has failed to properly preserve an issue for appeal, this court will only review it for plain error." (citing United States v. Caucci, 635 F.2d 441, 447 (5th Cir. 1981))).

Gonzalez-Perales contends that the district court should not have submitted the pattern jury instruction on lesser-included offenses because it allows for consideration of the lesser offense if after "reasonable efforts" the jury cannot agree on the greater offense.[5] Instead, she argues, the court should have submitted an "acquittal-first" instruction, which requires the jury to unanimously agree to acquit on the greater offense before considering the lesser offense. She relies on United States v. Williams, 449 F.3d 635 (5th Cir. 2006), which she claims "firmly placed [this Court] in the 'acquittal first' camp."

---

[5] The district court instructed the jury on the elements of the greater offense of alien transporting for financial gain as follows:

> For you to find the defendant guilty of this crime, you must first be convinced that the government has proven each of the following beyond a reasonable doubt:
>
> First: That an alien had entered or remained in the United States in violation of law;
>
> Second: The defendant knew or recklessly disregarded the fact that the alien was in the United States in violation of law;
>
> Third: That the defendant transported the alien within the United States with the intent to further the alien's unlawful presence; and
>
> Fourth: That the offense was committed for the purpose of commercial advantage or private gain.

The court later submitted this circuit's pattern jury instruction on lesser-included offenses:

> We have just talked about what the government has to prove for you to convict the defendant of the crime charged in the indictment, transportation of illegal aliens for commercial advantage or private financial gain by means of a motor vehicle. Your first task is to decide whether the government has proved beyond a reasonable doubt that the defendant committed that crime. If your verdict on that is guilty, you are finished. But if your verdict is not guilty, or if after all reasonable efforts you are unable to reach a verdict, you should go on to consider whether the defendant is guilty of transportation of illegal aliens by means of a motor vehicle. You should find the defendant guilty of transportation of illegal aliens by means of a motor vehicle if the government has proved beyond a reasonable doubt that the defendant did everything we discussed before except that it did not prove that the defendant committed the offense for commercial advantage or private financial gain.

The court also instructed the jury on the first three elements of alien transporting recited above, and submitted a verdict form that tracked the jury instructions.

During the deliberations, the court advised the parties of a jury note that the jury was deadlocked on the first question, but had reached a verdict on the second question, and that the jury wanted to know whether it had to decide the first question. The court instructed the jury to return to the jury room and make sure that it was unable to reach a verdict on the first question, and if so, then to answer the second question. The jurors returned a verdict of guilty of simple alien transporting.

Gonzalez-Perales is correct that Williams quotes with approval the proposition that "'[w]hen a greater and lesser offense are charged to the jury, the proper course is to tell the jury to consider first the greater offense, and to move on to consideration of the lesser offense only if they have some reasonable doubt as to the guilt of the greater offense.'" Id. at 641 (quoting Fuller v. United States, 407 F.2d 1199, 1227 (D.C. Cir. 1968) (en banc)). Williams did so, however, not to address the propriety of a "reasonable-efforts" instruction versus an "acquittal-first" instruction, but rather to explain that the district court there had reversed the order of consideration of greater and lesser offenses by improperly instructing the jury to consider the lesser offense first and then the greater offense. See id. Even then, the reason that Williams vacated the defendant's conviction was not because of this erroneous ordering but because the district court entered a judgment of guilty on the greater offense despite the fact that the jury did not unanimously agree to every element of that offense. See id. at 647-49. Williams, therefore, does not apply.

Although Gonzalez-Perales cites several cases from other jurisdictions that use the "acquittal-first" instruction instead of the "reasonable-efforts" instruction, she has not pointed to any case from this Circuit that invalidates the longstanding pattern jury instruction at issue. In addition, although she contends that she should have been given the choice between the two types of instructions, she never requested that the district court submit anything other than this Circuit's "reasonable-efforts" pattern jury instruction. See United States v. Tsanas, 572 F.2d 340, 346-47 (2d Cir. 1978) (holding that neither the acquittal-first instruction nor the reasonable-efforts instruction is "wrong as a matter of law. The court may give the one that it prefers if the defendant expresses no choice," and that, as a result, defense counsel's failure to request the instruction advocated on appeal did not amount to plain error).

Accordingly, the district court did not plainly err in submitting the pattern jury instruction on the lesser-included offense.

## III. Conclusion

Finding no reversible error in the district court's rulings, we AFFIRM.