# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-20351

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

NYLE CHURCHWELL,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

November 18, 2015

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, and BARKSDALE, and PRADO, Circuit Judges.

CARL E. STEWART, Chief Judge:

Nyle Churchwell ("Churchwell") appeals his conviction of two counts of aiding and abetting the making of a false statement in a passport application in violation of 18 U.S.C. §§ 1542 and 2. The district court, over his objections, sentenced Churchwell to a 42-month above-Guidelines sentence. For the reasons stated herein, we AFFIRM.

## I.   **Factual Background**

This case arises out of multiple passport fraud conspiracies. Beginning

No. 14-20351

in 2007, Churchwell was employed as an Adjudication Manager for the Houston Passport Agency ("HPA" or "the passport agency") in Houston, Texas.[1]

### A. The C.F./M.V.[2] Passport

On October 11, 2007, Churchwell assisted Lorna Brown ("Brown") and Jacquelyn Venters ("Jacquelyn") at the HPA in securing a false passport for Brown's relative, C.F. Jacquelyn was present because she agreed to submit a passport application for C.F. by using her daughter's name, M.V. Temi Russell ("Russell"), an acquaintance of Churchwell, was also present; she previously told Churchwell that Brown was coming to the passport agency for a passport. At the passport agency, Jacquelyn submitted an application to Churchwell, along with M.V.'s birth certificate, C.F.'s photo identification, and paperwork provided by Brown. Churchwell advised Jacquelyn that her husband, Merlin Venters ("Merlin"), was required to sign the application. Although Merlin was absent,[3] Churchwell accepted either Brown's or Jacqueline's signature in place of Jacqueline's husband.[4] Merlin did not submit an affidavit with the application to give consent for his purported child to receive a passport.

Churchwell documented both parents' identification information on the child's application; however, the number that Churchwell wrote as the father's identification number matched Brown's State of Texas driver's license. The photograph attached to the passport application in M.V.'s name depicted C.F.

---

[1] Churchwell has worked at the passport agency since 1979; he was previously a passport specialist and supervisory passport specialist. The HPA provides expedited services to passport applicants who have an emergency or are traveling within a very short period of time. As an adjudication manager, Churchwell managed, supervised, and performed administrative work concerned with adjudicating applications for United States passports. Passport specialists examine proof of identity and citizenship in order to issue United States passports to United States citizens. Passport specialists report to supervisory passport specialists, who report to the adjudication managers.

[2] The initials C.F. and M.V. will be used due to the fact that both are minor children.

[3] Brown told Churchwell that they "couldn't get him" and were "pressed for time."

[4] According to Russell, Brown signed the application and returned it to Churchwell.

2

No. 14-20351

Neither M.V. nor C.F. were present when Jacquelyn and Brown submitted the passport application for C.F. Churchwell signed and approved the passport for issuance.

### B. The Eric Gardner / Jerald Law Passport

On April 15, 2010, a man claiming to be Jerald Law ("Law") went to the passport agency with Brown. Eric Gardner ("Gardner") represented himself as Law and submitted his photo with the Gardner/Law application to Churchwell. Gardner gave Churchwell a "little scratch piece of paper" with a Texas driver's license number written on it as proof of identification. Gardner also handed Churchwell an uncertified copy of his birth certificate. Churchwell proceeded to write the numbers from the torn piece of paper on the passport application in the section that required the driver's license number and added information on the application that was not on the piece of paper.[5] Gardner also did not appear to know the answers to basic questions such as the name of his employer; instead, he looked to Brown for the appropriate responses.

A passport specialist also assisting Gardner expressed concern to Churchwell about the Gardner/Law application because of Gardner's lack of proper identification and missing information in his application. Churchwell told the specialist to obtain a DS–71 form, which is required from an identifying witness when the applicant does not have his primary identification. However, because Brown did not have valid identification, Brown could not serve as a witness.[6]

---

[5] Despite receiving no other information from Gardner, Churchwell (1) checked the box for "Other" in the Identifying Documents section to indicate what document was provided and wrote "STATE ID CARD," (2) listed the expiration date on the application as "DOB 2012," (3) wrote "SAME" in the space for the applicant's name, and (4) wrote down "TX" as the "Place of Issue."

[6] Brown's license was cut across the top, showing that it was invalid.

No. 14-20351

Churchwell nevertheless advised the specialist to accept the application and prepare it for will call, which would allow Gardner to accept it after it was prepared. When the specialist noted that Gardner's application exhibited many of the same fraud indicators as an application she reviewed days prior for Churchwell, Churchwell stated that the earlier passports were not issued.[7] However, the passport specialist alleged that Churchwell's statement was false because the prior applicant's passport was already distributed to the applicant.

*C. Churchwell's Investigation and Admissions*

On June 4, 2012, Special Agent Matthew Ray ("the investigator") of the United States Diplomatic Security Service ("DSS") interviewed Churchwell about the disputed passports. Brian Clark ("Clark"), an assistant director at the HPA, attended the interview at Churchwell's request. While Churchwell initially denied knowing the applicants or being involved with assisting them in obtaining passports, the investigator revealed to Churchwell that the DSS knew that Churchwell did know the applicants, had in fact assisted them in obtaining passports, and that the DSS had telephone records indicating conversations between Churchwell and either Russell or Brown. As a result, Churchwell admitted that he knew Russell and Brown and helped them to obtain passports,[8] but denied knowing that the applications were fraudulent.

## II.    Procedural History

On September 5, 2012, Churchwell was charged in a superseding indictment with one count of conspiracy to commit passport fraud (Count 1)

---

[7] The specialist previously assisted Russell, Brown, Jacquelyn, and Theodore Fox in applying for a passport. The facts relating to this application formed the basis for Count 3 of the indictment, a charge for which Churchwell was acquitted. *See* discussion *supra*.

[8] Churchwell acknowledged issuing the passports and inputting both parents' names and identification numbers in the application. Churchwell stated that this information was relevant because it "indicated that a person by the name of Merlin Venters with that ID number appeared before him in person, and he copied down the information." Churchwell also identified his handwriting on the Gardner/Law application.

4

No. 14-20351

and three counts of aiding and abetting the willful and knowing making of a false statement in a passport application (Counts 2-4) in violation of 18 U.S.C. §§ 1542 and 2. Churchwell pleaded not guilty and a jury convicted him of Counts 2 and 4. He was acquitted of Counts 1 and 3.

A probation officer prepared a Presentence Investigation Report that determined that Churchwell had a total offense level of 13. This included a two-level enhancement for an abuse of trust. The report considered Churchwell's Category I criminal history and gave an advisory guideline range of 12-18 months in prison. The probation officer suggested that an upward departure pursuant to the United States Sentencing Guidelines may be warranted, and the Government moved for an upward departure or a variance under 18 U.S.C. § 3553(a). Churchwell objected to a sentencing enhancement based on the number of passports involved and to the Government's motion for an upward departure. The district court overruled Churchwell's objections and imposed above-guidelines concurrent sentences of 42 months in prison.

Churchwell timely appealed his conviction and sentence. On appeal, Churchwell challenges (1) the sufficiency of the evidence at trial to support the jury verdict, (2) the district court's admission of lay opinion testimony, (3) the district court's allowance of comments made by a prosecutor during closing argument that were allegedly prejudicial, and (4) the procedural and substantive reasonableness of his above-Guidelines sentence.

### III.   Sufficiency of the Evidence

*A. Standard of Review*

This court reviews a claim of insufficient evidence *de novo*. *See United States v. Harris*, 666 F.3d 905, 907 (5th Cir. 2012). We review the jury's verdict with great deference, and view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find guilt beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

"[T]he jury is free to choose among reasonable interpretations of the evidence." *See United States v. Brugman*, 364 F.3d 613, 615 (5th Cir. 2004).

    *B. C.F./M.V. Passport (Count 2)*

    Churchwell challenges his conviction for aiding and abetting the making of a false passport application by alleging that there was insufficient evidence. The record reveals that Churchwell's conviction can be upheld because he accepted and certified as true the C.F./M.V. passport application containing a false signature, even though he knew that the purported father was not present and did not in fact sign the passport application to give his consent.

    The Government introduced sufficient evidence to establish the substantive elements of the offense. To obtain a conviction under 18 U.S.C. § 1542, the Government must prove beyond a reasonable doubt that the defendant "willfully and knowingly ma[de] any false statement in an application for passport with intent to induce or secure the issuance of a passport under the authority of the United States." 18 U.S.C. § 1542; *United States v. Reyes-Ochoa*, 503 F. App'x 268, 269 (5th Cir. 2012). In order for a parent to obtain a passport for a child under age 16, both parents must apply in person at the passport agency. *See* 22 C.F.R. § 51.28(a)(2). Alternatively, the application may be executed by only one of the parents if that parent shows a notarized statement from the absent parent consenting to the issuance of the passport. *See id.* § 51.28(a)(3)(i). When a parent, or another individual, signs a passport application in place of the second parent, the signing individual has willfully and knowingly made a false statement on the face of the passport application.[9] Evidence at trial conclusively showed that either Jacquelyn or

---

[9] *See United States v. Baum*, 380 F. Supp. 2d 187, 187–204 (S.D.N.Y. 2005) (holding that the defendant, who did not have sole custody of her child and forged her ex–husband's signature on the child's passport application, made a false statement in violation of 18 U.S.C. § 1542).

No. 14-20351

Brown made false statements on the child's passport application when one of the two signed falsely for Merlin and provided M.V.'s birth certificate and C.F.'s photo as a part of the C.F. passport application.

While we have held that a defendant may be criminally liable for making a false statement on a passport application, our case law has not yet addressed the issue in this case: whether a government agent may be held criminally liable for aiding and abetting where he *accepts or certifies as true* another's passport application that he knew contained false statements. Addressing an issue of first impression, we hold that the record supports the district court's finding of Churchwell's guilt. As a general rule, a defendant is guilty of aiding and abetting if he "knowingly associated himself with and participated in the criminal venture." 18 U.S.C. § 2; *United States v. Burgos*, 94 F.3d 849, 873 (4th Cir. 1996). In *United States v. Aifang Ye*, the Ninth Circuit upheld a conviction of aiding and abetting where the defendant assisted her brother-in-law, Zhenyan, who signed her child's passport application as the child's father. *See* 792 F.3d 1164, 1165–67 (9th Cir. 2015). Zhenyan used his brother's name and passport as identification. *Id.* at 1166. The defendant was charged with aiding and abetting passport fraud because she agreed to sign and submit a false application with knowledge of her brother-in-law's false signature. *Id.*

Other circuits have considered whether aiding and abetting includes certifying and accepting false statements. For example, in *United States v. Dunne,* the Tenth Circuit suggested that a defendant may be held criminally liable for aiding and abetting where he certified and accepted false information in an audit report and other financial statements in documents submitted to the United States government. *See* 324 F.3d 1158, 1162–64 (10th Cir. 2003). It is undisputed that Churchwell participated in the criminal venture. We now address whether he knowingly associated himself with this venture.

No. 14-20351

Churchwell's argument that his negligence does not constitute aiding and abetting is unavailing.  He acknowledges that the passport agency's Foreign Affairs Manual required both parents to be present in order for a minor child to obtain a passport, that Merlin was not present, and that either Jacquelyn or Brown signed on his behalf.  Churchwell points out, however, that there was no evidence establishing that he knew that the passport application was fraudulent.  The Government counters that Churchwell was aware of the passport agency procedure[10] and intentionally bypassed its two-parent consent requirement.  The Government thus contends that Churchwell made a false statement by accepting and adjudicating the application despite Merlin's absence.  In light of the record, we affirm the verdict.

Here, Churchwell, too, signed the passport application knowing of a false signature made by someone other than the child's father.  He contends that simply disregarding the passport agency's policy and his mere negligence precludes him from conviction because he did not know that the information on the application was false or that Merlin had not given his wife permission to sign on his behalf.  This argument is of no moment because his signature was a certification of the application's contents as true. By certifying the application, Churchwell acknowledged that both the father and mother were present even after he witnessed someone other than Merlin sign the application.   Churchwell's conduct, coupled with his training to detect suspicious behavior, was sufficient to show a full understanding of the content of the documents he signed.  In fact, criminal culpability is particularly clear here because the false statements were made in Churchwell's presence during his service as a government official executing his official duties, thereby

---

[10] The Government contends that this is a "two-parent consent law."  *See* Pub. L. No. 106-113, Title II, § 236, 113 Stat. 1501 (1999); 22 C.F.R. § 51.28.

becoming a party to passport fraud.  This act alone is sufficient to impose criminal liability and his argument does not stand.

Accordingly, a review of the record shows that a reasonable jury was free to reject Churchwell's argument and find him guilty of aiding and abetting passport fraud.

### C. Eric Gardner / Jerald Law Passport (Count 4)

Churchwell also challenges the sufficiency of the evidence surrounding the Gardner/Law passport.  The Government has established the substantive offense of making a false statement on the Gardner/Law passport application.  *See* 18 U.S.C. § 1542.  We must now address whether Churchwell aided and abetted the commission of this act.  "[K]nowingly associat[ing] . . . with and participat[ing] in [a] criminal venture" is sufficient to find criminal liability.  *See* 18 U.S.C. § 2; *Burgos*, 94 F.3d at 873.  This court has expanded the definition of knowledge to include circumstances where a defendant exhibits deliberate ignorance.  *See United States v. Demmitt*, 706 F.3d 665, 674–77 (5th Cir. 2013).  Deliberate ignorance requires that a defendant (1) be subjectively aware of a high probability of the existence of the illegal conduct; and (2) purposely contrive to avoid learning of the illegal conduct.  *Id.* at 675.  In *Demmitt*, we concluded that a deliberate ignorance instruction to the jury was proper where the defendant turned a blind eye to several instances of suspicious conduct in a fraud conspiracy: clients directly informed the defendant of missing money from their accounts; the defendant was copied on letters sent to clients about incorrect charges on accounts; the defendant tightly controlled the business by making various business decisions; and the defendant took no actions to investigate or rectify the fraud.  *Id.* at 673–74, 676; *see also United States v. Barrera*, 444 F. App'x 16, 21–23 (5th Cir. 2011) (allowing the inference that a government agent who prepared falsified documents for a government agency and made no effort to verify their truth

purposefully "hid her head in the sand" and was subjectively aware of the probability of illegal conduct).

Churchwell's impropriety is clear with regard to the Gardner/Law passport application. He again points out that he did not knowingly and willfully participate in including Law's false identification information on the application because he did not know that Gardner was not Law. He maintains that his "negligence" in accepting the handwritten paper with the identification number on it was not sufficient to show that he willfully and knowingly made a false statement. The Government, on the other hand, asserts that the conviction may be upheld in light of Churchwell's deliberate ignorance because Churchwell "deliberately blinded himself to Gardner's true identity when he accepted proof of identification from a torn piece of paper with no photograph."

Churchwell relies on a proposition from *United States v. Gabriner*: the absence of evidence showing that a defendant knew that a passport applicant provided false information is fatal to a prosecution for his knowing participation in the inclusion of false statements on the passport application. 571 F.2d 48, 49–51 (1st Cir. 1978). However, Churchwell's conduct clearly shows a subjective awareness of a high probability of the fraud and that he purposely contrived to avoid learning of the illegal conduct. Churchwell had an ongoing relationship with co-defendant Russell, having met Russell shortly after 1998. Churchwell exchanged multiple telephone calls with both Brown and Russell and had previously assisted Russell in getting another passport. Churchwell accepted proof of identification from a torn piece of paper with no photograph from an applicant whom Russell told Churchwell about and whom Brown brought to the passport agency. Finally, Churchwell independently placed information on the application that was not provided by the applicant.

10

Each additional interaction amplifies the link between Churchwell and his knowledge of the fraud.

Churchwell's participation in multiple passport application transactions over the years also indicates a subjective awareness of fraud. He served in a managerial role that would expose him to several fraudulent acts, was aware of the office requirements, and was aware of several suspicious factors.[11] Churchwell's experience and knowledge of the passport regulations indicate that he deliberately chose not to investigate whether Gardner was in fact Law.

Under the circumstances, the record suggests that there was sufficient evidence from which a jury could reasonably find that Churchwell had knowledge of Gardner's intention to obtain a passport using false information and that Churchwell deliberately blinded himself to the fraud therein.

## IV.    Lay Opinion Testimony

### A. Standard of Review

We review a district court's ruling on the admissibility of witness testimony for an abuse of discretion. *See United States v. Heard*, 709 F.3d 413, 422 (5th Cir. 2013); *United States v. Ebron*, 683 F.3d 105, 133 (5th Cir. 2012). Even if the district court abuses its discretion in admitting evidence, this court will affirm "[u]nless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction." *United States v. Mendoza-Medina*, 346 F.3d 121, 127 (5th Cir. 2003) (internal quotation marks and citation omitted).

---

[11] Although participation in a single suspicious transaction might be insufficient to show deliberate ignorance, this court has held that the "routine and repeated pattern of suspicious transactions" may be sufficiently suspicious to infer subjective awareness of illegal activity. *See United States v. Nguyen*, 493 F.3d 613, 620 (5th Cir. 2007).

No. 14-20351

*B. The Testimony*

Churchwell argues that the district court erred in admitting Clark's testimony about his belief that Churchwell knew fraud was involved in the passport applications.  Federal Rule of Evidence 701 provides that a lay witness may offer an opinion so long as that opinion is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (3) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Although a witness may not give legal conclusions, "[a]n opinion. . . is not objectionable simply because it embraces an ultimate. . . issue" for the jury's determination.  *United States v. Espino-Rangel*, 500 F.3d 398, 400 (5th Cir. 2007).  Churchwell does not contend that Clark's conclusion that Churchwell was not telling the truth about his commission of fraud was based on scientific or technical knowledge or that it was not based on personal perceptions. Instead, he asserts that the testimony was both irrelevant and unhelpful.  We disagree.

At trial, Clark first testified that he felt that Churchwell was eventually truthful.  On redirect, the prosecutor's subsequent line of questioning allowed Clark to add to his initial testimony that he did not believe Churchwell's statement when Churchwell said he did not know that the passports he approved were frauds or that fraud was involved.  The statement at issue on appeal, "At the end I did not believe that [Churchwell was being honest]," ultimately revealed that Clark did not accept as true that Churchwell was telling the truth during his interview.

This statement was relevant to Clark's overall testimony.  Clark worked with Churchwell and was in the interview room with Churchwell during the entirety of the questioning by the investigator.  Clark's testimony called into question the legitimacy of Churchwell's initial denial of knowledge of fraud in

light of his experience with the applicable regulations and policies of the passport agency, the sequence of events leading up to approving the C.F./M.V. passport, the egregious deficiencies in the documentation provided by Gardner in the Gardner/Law application, and Merlin's obvious absence from the passport agency. Clark's response was directly linked to perceptions formed as Churchwell responded to questioning and was relevant to Churchwell's role as a passport agent.

Churchwell further asserts that the evidence was not helpful to the jury because they could have determined for themselves whether Churchwell was telling the truth about his fraudulent intent. However, we have never held that testimony is unhelpful merely because a jury might have the same opinion as the testifying witness. *See United States v. El-Mezain*, 664 F.3d 467, 526–27 (5th Cir. 2011); *see accord United States v. Cruz-Rea*, 626 F.3d 929, 935 (7th Cir. 2010). When read in context, the introduction of the statement was helpful to understanding Clark's testimony. *See* Fed. R. Evid. 701(b). On cross-examination, Clark initially stated to defense counsel that Churchwell "eventually" told the truth about his involvement with the disputed passports. The defense then elicited testimony that Churchwell first admitted to his involvement in providing passports but had denied knowing that the applications were fraudulent. Because Clark first stated that Churchwell was truthful, the subsequent line of questioning on redirect, where Clark stated that he ultimately did not believe Churchwell, helped to correct any misapprehension by the jury that Churchwell's eventual truthfulness was Clark's only opinion of him.

Although Churchwell maintains that the jury had the duty to determine whether Churchwell was telling the truth and could have done so on their own, the jurors did not personally view Churchwell's conduct and behavior during the interview, as Clark did. Clark "was in a unique position to observe

[Churchwell's] demeanor," *Heard*, 709 F.3d at 422, and formulate an opinion that the prosecution sought to highlight. This was appropriate, especially after the defense elicited testimony from Clark that Churchwell was truthful at some point. We therefore find that the district court did not abuse its discretion in admitting Clark's testimony.

Even if the district court erred, such error would be harmless in light of the wealth of evidence demonstrating Churchwell's guilt. *See United States v. Ebron*, 683 F.3d 105, 133 (5th Cir. 2012); *Mendoza-Medina*, 346 F.3d at 127. Error is not harmless if there is a "reasonable possibility that the improperly admitted evidence contributed to the conviction." *Mendoza-Medina*, 346 F.3d at 127 (internal quotation marks and citation omitted). Merely stating, as Churchwell does, that Churchwell's supervisor's opinion "was devastating to the defense" is insufficient to show that this testimony contributed to a guilty verdict. The record contained enough other information for the jurors to reach the same conclusion as Clark. *See Espino-Rangel*, 500 F.3d at 400–01 (concluding that the admission of lay opinion testimony was not error or was harmless because the evidence was sufficient to support the conviction even in the absence of the opinion testimony); *see also El-Mezain*, 664 F.3d at 512–13 (finding that any error in the admission of lay opinion testimony was harmless because it was cumulative to other evidence presented). Clark's testimony, consistent with the view that Churchwell was involved in the fraud, is merely cumulative of what was already showcased in the record. Thus, its inclusion was harmless.

## V.    The Prosecutor's Statements During Closing Argument

Churchwell next argues that the district court committed error by allowing the prosecutor to make a hyperbolic comment when he presented facts outside of the record during closing argument. As Churchwell did not object to the prosecutor's statement, we review this issue for plain error. *See United*

*States v. Virgen-Moreno*, 265 F.3d 276, 292 (5th Cir. 2001).  To establish plain error, a defendant must show a forfeited error that is clear or obvious and that affects his substantial rights.  *See Puckett v. United States*, 556 U.S. 129, 135 (2009).  When the defendant meets this burden, we have the discretion to correct the error and will do so only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings.  *Id.*  This court considers three factors in deciding whether a defendant's substantial rights have been affected by the Government's statement during closing argument: "(1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction by the judge, and (3) the strength of the evidence supporting the conviction."  *United States v. Thompson*, 482 F.3d 781, 785 (5th Cir. 2007) (internal quotation marks and citation omitted).[12]  The ultimate question in determining whether a prosecutor's comments amount to reversible error is whether the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

Churchwell contends that the prosecutor's argument is (1) improper because it includes evidence that is not in the record; and (2) prejudicial because it affected his substantial rights.  During closing arguments, defense counsel minimized Churchwell's conduct with respect to the fraudulent passport applications, asserting that his actions were at most negligent and that he may have "cut[] corners" on office policy but that there was no evidence

---

[12] This court also considers whether the argument had some foundation in the record. *See United States v. Vaccaro*, 115 F.3d 1211, 1216 (5th Cir. 1997).  The prosecution is entitled to make a fair response in rebuttal to the argument presented by the defense; in other words, if the argument is an "invited response," the court should also take into consideration the arguments that invited the response.  *Id.*  The court "assume[s] that a jury has the common sense to discount the hyperbole of an advocate, discounting the force of the argument."  *Id.*

that he knew of the fraud. Following this, the prosecutor focused the jury on the seriousness of the offense, stating that Churchwell "abuse[d] his position and his power that he had to issue one of the most valuable documents in the world: a United States passport. People kill over that document. A passport that allows you to open bank accounts abroad, travel within countries." When we consider the closing argument in light of the context in which it was given, we do not agree that it was improper.[13] Notwithstanding, even if we were to find that the prosecutor's comments were improper, Churchwell's substantial rights were not affected.

*A. Magnitude of Prejudicial Effect*

First, while Churchwell is correct that there is no evidence presented in the record to show that anyone has committed murder in order to obtain a United States passport, the comments in the closing argument solely provide an example of the importance of a United States passport and express the prosecutor's opinion of what should be the outcome of the case. In *United States v. Baptiste*, the Fourth Circuit held that a prosecutor's closing argument, in which he used a metaphor involving a defendant's hypothetical role in a terrorist conspiracy, was not reversible probable error. 596 F.3d 214, 226–28 (4th Cir. 2010). The court noted that the prosecutor's clear purpose in posing the hypothetical was to provide the jury with an example of unforeseeable

---

[13] While we do not find the prosecutor's closing argument to be dispositive or command reversal, we note that the Government's counsel could have been less dramatic in its argument to the jury. "Counsel is accorded wide latitude during closing argument." *United States v. Reagan*, 725 F.3d 471, 492 (5th Cir. 2013) (internal quotation marks and citation omitted), *cert. denied*, 134 S. Ct. 1514 (2014). However, the prosecutor must discuss only properly admitted evidence and reasonable inferences or conclusions that he or she wishes to be drawn from that evidence. *See United States v. Anderson*, 755 F.3d 782, 797 (5th Cir. 2014).

criminal activity. *Id.* at 227. The remarks made clear that the government was not alleging that the defendant was involved with terrorism.[14]

Although a passport is in fact a document which could be used by terrorists to present themselves as United States citizens or sought by individuals involved with the drug trade who would conceivably kill for it, nothing in the prosecutor's remarks hint at an intent to show that Churchwell's conduct would lead to such acts. The prosecutor's comments solely served to highlight the extreme importance of a United States passport.

The prosecutor also merely bolstered testimony previously given at trial. This court has squarely addressed this concern. *Thompson*, 482 F.3d at 786 ("[T]he prosecutor voiced his opinion about the conclusions that the jury should reach based on the evidence, and engaged in a bit of . . . hyperbole, as trial lawyers are want to do in closing arguments. And, absent some evidentiary basis for those conclusions, his statements might have constituted improper prosecutorial 'testimony.' In his closing argument, however, the prosecutor directly linked his assertions to the evidence presented at trial.").

At trial, Clark testified about the value of a United States passport, saying it is "considered the most secured travel document in the world." He expressed the concern, without objection, "that a person that's a terrorist . . . might get an American passport." He also testified that two individuals that sought Churchwell's assistance in obtaining passports, one of whom was Gardner, had a history of trafficking or possessing drugs.

---

[14] *Baptiste*, 596 F.3d at 226–28. *See also United States v. Gonzalez-Perales*, 313 F. App'x 677, 682–83 (5th Cir. 2008) (assuming that the jury was able to comprehend and discount the prosecutor's reference to the defendant as a "pro" in alien smuggling); *Vaccaro*, 115 F.3d at 1216 (finding no plain error in the prosecutor's reference to the defendants as "criminals").

A passport may be used both for innocent and illegal acts. But by making these comments, the prosecutor made clear his opinion of the case while using the assistance of prior testimony: someone serving in Churchwell's capacity is tasked with safeguarding the proper distribution of such an important document. In all attempts, he must prevent fraud.

### B. Cautionary Instructions

Churchwell argues that even if counsel successfully objected, an instruction to disregard the closing argument would not have cured the harm and a mistrial would have been required upon request. The court did not provide any cautionary instructions to the jury because Churchwell made no objection before the district court. Nonetheless, we need not address whether the instruction would "purge the taint of a prosecutor's prejudicial comments" because there is sufficient evidence to support Churchwell's conviction and thus to overcome any potential prejudicial effect. *See United States v. Aguilar*, 645 F.3d 319, 325–26 (5th Cir. 2011) (acknowledging that strong inculpatory evidence can defeat a prosecutor's prejudicial comments).

### C. Strength of the Inculpatory Evidence

In light of the quantity of evidence against Churchwell, the court's allowance of the remark without a cautionary instruction did not affect Churchwell's substantial rights. As our earlier recitation of the evidence makes clear, the testimony and exhibits offered by the government make a guilty verdict reasonable. *Id*. Churchwell assisted two separate parties in making false statements on a passport application where he (1) knowingly certified as true a false passport application, and (2) deliberately ignored the suspicious and fraudulent acts of a passport applicant. Each act, independently, is sufficient to show knowledge of fraud sufficient to lead to a conviction for aiding and abetting. Accordingly, the district court did not commit reversible plain error.

No. 14-20351

## VI.    The Above-Guidelines Sentence

In Churchwell's final argument, he alleges that his 42-month sentence was procedurally and substantively unreasonable.  He contends first, that the upward variance was not justified because it was already included in the calculation of the Guidelines sentencing range; second, that any interference with government function was inherent in his offense and did not justify an upward departure; and third, that a sentence of more than twice the top of the Guideline range was unreasonable where the district court failed to adequately explain why it was necessary to impose such a sentence.  We disagree.

*A. Standard of Review*

We review sentences for reasonableness.  *Gall v. United States*, 552 U.S. 38, 46 (2007).  We first examine whether the district court committed any significant procedural error, including "failing to adequately explain the chosen sentence."  *Id.* at 51.  If the district court's decision is procedurally sound, we will next consider the substantive reasonableness of the sentence under an abuse-of-discretion standard.  *Id.*; *United States v. Mondragon-Santiago*, 564 F.3d 357, 360 (5th Cir. 2009).  Churchwell did not object to the district court's alleged failure to provide reasons for the imposed sentence. We therefore review this issue for plain error.  *See Mondragon-Santiago*, 564 F.3d at 361.    In light of the record, the above-Guidelines sentence is both procedurally and substantively reasonable.  *See United States v. Campos–Maldonado*, 531 F.3d 337, 338 (5th Cir. 2008) (per curiam).

*B. Procedural Reasonableness*

As an initial matter, we note that the district court committed no procedural error.  "The district court must adequately explain the sentence to allow for meaningful appellate review and to promote the perception of fair sentencing."  *Mondragon-Santiago*, 564 F.3d at 360 (internal quotation marks and citation omitted).    While within-Guidelines sentences require little

19

explanation, the district court must give a more detailed explanation for a non-Guidelines sentence. *United States v. Smith*, 440 F.3d 704, 707 (5th Cir. 2006); *United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005). "The farther a sentence varies from the applicable Guideline sentence, the more compelling the justification based on factors in section 3553(a) must be." *Smith*, 440 F.3d at 707 (internal quotation marks and citation omitted).

The district court calculated the applicable Guidelines range, allowed both parties to present arguments as to what they believed the appropriate sentence should be, and considered all of the section 3553(a) factors. *See Gall*, 552 U.S. at 51. In doing so, the district court adequately explained its reasoning for choosing the sentence. The court stated that Churchwell's conduct went beyond merely approving the deficient passport applications: it included ignoring and threatening subordinate employees who identified potential fraud and sexually harassing passport couriers. The court also concluded that Churchwell, in his managerial position at the HPA, created a substantial risk of harm to governmental functions and to the integrity of the passport system by ignoring the proper procedures for issuing passports. The district court deemed the sentence appropriate in light of Churchwell's overt and egregious misconduct and abuse of trust in his administrative position at the HPA.

Similarly, while Churchwell argues that undermining the integrity of the passport system was inherent in the offense itself and thus did not warrant a departure under section 5K2.7 of the United States Sentencing Guidelines,[15] the district court specified that the circumstances of the offense and Churchwell's characteristics warranted a variance under section 3553(a) or,

---

[15] Churchwell contends that the reasons given by the district court are not adequately compelling to warrant the upward departure.

alternatively, a departure under section 5K2.7. The district court explained that the imposed sentence was chiefly a variance under the section 3553(a) factors. As the district court pointed out, Churchwell's misconduct called into question the overall integrity of the passport system and the likelihood that applicants would receive fair and impartial treatment. Churchwell has not established a clear or obvious procedural error. Because the district court's sentencing decision is procedurally sound, we must now consider the substantive reasonableness of the sentence imposed.

*C. Substantive Reasonableness*

Churchwell also contends that his 42-month sentence is substantively unreasonable because it is much higher than the advisory Guidelines range.[16] When conducting a review of substantive reasonableness, we consider the totality of the circumstances, including the extent of any variance from the Guidelines range. *See Gall*, 552 U.S. at 51. If the sentence is outside the Guidelines range, we may not apply a presumption of unreasonableness. *Id.* We may consider the extent of the deviation but must give due deference to the district court's decision that the section 3553(a) factors, as a whole, justify the extent of the variance. *Id.* An above-Guidelines sentence unreasonably fails to reflect the statutory sentencing factors set forth in section 3553(a) only where it "(1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors."

---

[16] Churchwell maintains that his actions should not be considered an abuse of trust because his conduct with the female couriers, while not to be encouraged, did not come to light until the investigation began, was mainly consensual and did not warrant such a high sentence. Churchwell also asserts that the "insignificant" disruption to the passport system resulting from his conduct was inherent in the offense and did not warrant a variance. He also indicates that his sentence was much higher than those received by his codefendants, Russell and Brown.

*Smith*, 440 F.3d at 708. "The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall*, 552 U.S. at 51.

First, the record demonstrates that the district court made an individualized assessment of all relevant factors to determine whether a sentence within the Guidelines range was sufficient but not greater than necessary to achieve the goals of section 3553(a). The court pointed to Churchwell's egregious conduct in overruling subordinates who found evidence of fraud and in demanding sexual favors from couriers. The court also stressed the value of a United States passport and the harm caused by Churchwell's failure to abide by the policies despite his position of authority at the HPA.

Second, Churchwell's arguments, *see supra* Part VI.A–C, do not show that the district court gave weight to improper factors. The court noted that it based its sentence on (1) the nature and circumstances of the offense and the history and characteristics of the defendant pursuant to 18 U.S.C. § 3553(a)(1); and (2) the seriousness of the offense in order to promote respect for the law and provide just punishment for the offense. *See* 18 U.S.C. § 3553(a)(2)(A); *Smith*, 440 F.3d at 708. Churchwell maintains that the variance was not justified on the basis of an abuse of trust because that factor was taken into account by the Guidelines and because his sexual relations with the couriers was either consensual or unreported until the investigation began. However, the district court specifically delineated between the abuse of trust arising from Churchwell's criminal conduct, which justified the two-level sentencing enhancement, and his overall threatening and intimidating demeanor in carrying out his duties at the HPA, which warranted the variance. Churchwell's argument that two of the couriers engaged in consensual sexual conduct is also disingenuous: one of the couriers stated that Churchwell made numerous sexual advances toward her and required her to engage in sexual

contact with him when she asked for a favor on a client's passport. Although the courier did not report him, her interview indicated that she was afraid of retaliation from Churchwell, who could ensure that she was fired, and that she feared for her safety. Churchwell admits that the courier rejected his advances. Churchwell has not shown that the district court's stated reliance on his abuse of trust as a basis for a variance was improper.

Churchwell also asserts that the court's sentence is improper because the disruption to passport services was "insignificant." This is not supported by the record. A letter from the United States Department of State reflected that as a result of Churchwell's actions, an audit of passport applications processed at the HPA required 11 employees to review over 1,400 applications for evidence of malfeasance, which resulted in substantial cost to the passport agency. The Government was required to institute additional procedures and training sessions to attempt to resolve future misconduct. An Assistant Secretary at the State Department also noted that Churchwell had involved numerous subordinate employees in his fraudulent conduct, which resulted in emotional distress and fears of reprisals. The aforementioned repercussions of Churchwell's conduct were not at all insignificant and were properly considered by the district court.

Churchwell implies that his sentence should have been closer to those received by his codefendants. *See* 18 U.S.C. § 3553(a)(6); *United States v. Candia*, 454 F.3d 468, 476 (5th Cir. 2006); *Smith*, 440 F.3d at 709. However, he has not shown that his codefendants, who were not employees of the HPA and who were not directly responsible for ensuring the issuance of the improper passports, were similarly situated to him.

Finally, Churchwell has not shown that there was a clear error in judgment in balancing the sentencing factors. The district court properly calculated the applicable Guidelines range, considered testimony and

No. 14-20351

supplemental materials provided by each party, and carefully articulated permissible reasons for its variance.  We therefore accord the sentencing judge's decision great deference in this determination, and affirm the sentence.

## VII.  Conclusion

For the aforementioned reasons, we AFFIRM the district court's decision in full.